[No. 246-41222-1.    Division One—Panel 2.    July 13, 1970.]

TYEE CONSTRUCTION CO., *Respondent and Cross-appellant,* v. PACIFIC NORTHWEST BELL TELEPHONE COMPANY, *Appellant.*

*John N. Rupp, Donald D. MacLean, Bennett Feigenbaum,* and *Edmund B. Raftis,* for appellant.

*Montgomery, Purdue, Blankinship & Austin* and *John D. Blankinship,* for respondent and cross-appellant.

WILLIAMS, J.—Tyee Construction Company sued Pacific Northwest Bell Telephone Company to recover for labor and materials required to replace the telephone company's conduit in a tunnel owned by Puget Sound Power & Light Company (Puget Power). The cause came on for trial before the court without a jury. Judgment was entered for plaintiff in the amount of $11,019.48. Defendant telephone company appeals.

The facts are these: Puget Power's tunnel was constructed to carry its lines underneath a section of the highway at one of the new traffic interchanges in King County. The tunnel was 247 feet long by 42 inches in diameter and crossed at a point where appellant also had lines to be carried under the roadway. Since Puget Power placed the conduits for its lines around the circumference of the tunnel, appellant approached Puget Power with a proposal that it be permitted to use the center space. The engineering staffs of the two companies determined that the plan was feasible and from the standpoint of cost would be advantageous to both. There followed a contract between the two which is not of record, but which granted appellant the use of the core of the tunnel.

Respondent, which was also the prime contractor on the tunnel for Puget Power, agreed with appellant to place its conduits and fill the tunnel with concrete or granuletic material. The plans, specifications and contract were prepared by appellant. Respondent decided to fill the tunnel by pumping a grout, consisting of sand, water and cement, into the tunnel by means of a 2-inch pipe, which would be retracted as the filling progressed. It also proposed to hang the conduits from wooden frames rather than in a fiber casing as specified in the plans. Both procedures were acceptable to and approved by appellant.

Respondent placed hangers the length of the tunnel, hung the conduits therefrom, and inserted the 2-inch pipe preparatory to filling the tunnel. At this point, Puget Power ordered a special type of sand for fill material, rather than the grout, because of the heat-dissipating qual-

ity of the sand. Representatives of both appellant and respondent met with Puget Power's local engineers in an effort to have the order countermanded. When this failed, an engineer of appellant appealed to the head engineer's office of Puget Power. After this meeting he reported back to respondent, "Yes, they definitely want sand installed. It looks like you will have to put sand in." Respondent then hired a company which blew the sand in through the 2-inch pipe.

Upon completion of the filling of the tunnel with sand, the conduits were tested. Those of Puget Power were satisfactory, but several of appellant's proved to be plugged. Without acknowledging responsibility, the parties agreed that respondent should remove the sand from the tunnel. When this was done, it appeared that Puget Power's conduits, made of plastic, were sound, but that appellant's, made of a different, fibrous material, had been severely damaged through the effect of sandblasting during the filling of the tunnel.

Again without acknowledging responsibility, the parties agreed that respondent should redo the work, except that the conduits were to be of plastic. When this was accomplished, the conduits were tested and proved to be satisfactory. Appellant placed the responsibility for the mishap upon respondent and refused to pay for the excavation of the tunnel and the replacing of the conduits and sand. This action ensued.

Appellant makes four contentions in support of its appeal. The first is that respondent must bear the risk of unforeseen difficulties because it was directed what to do but not how to do it, after the pattern of *Maryland Cas. Co. v. Seattle*, 9 Wn.2d 666, 116 P.2d 280 (1941), and *Brown v. Ehlinger*, 90 Wash. 585, 156 P. 544 (1916). In both of these cases, the contractor was required to accomplish an end result without specification as to the method to be used. In *Maryland Cas. Co.*, the contract for the construction of a sewer tunnel did not specify how it was to be done, although the contractor bid on the assumption that it would

be a normal operation. Water was encountered, making necessary the use of compressed air, and this greatly increased the cost of performing the contract. The contractor was not permitted to recover for the increased cost because of this principle quoted from *United States v. Spearin*, 248 U.S. 132, 63 L. Ed. 166, 39 S. Ct. 59 (1918) in *Maryland Cas. Co. v. Seattle, supra* at 676:

> "Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered . . .

(Italics omitted.)

*Brown v. Ehlinger, supra,* was similar, in that the contract which called for the removal of rock was made more expensive because the contractor was not permitted to crush the material at the site. The crushing was halted by a court injunction obtained by a neighbor. The court held that, even though the parties had contemplated that the rock would be crushed before removal, the procedure was not a part of the contract.

The situation here is markedly different. The respondent was obligated to place the conduits in position and fill the tunnel with sand. The trial court found upon substantial evidence that the only way to inject the sand was by blowing, and that it was not possible to do this without damaging appellant's conduit. This is the situation found in *Huetter v. Warehouse & Realty Co.*, 81 Wash. 331, 142 P. 675, 1915C L.R.A. 671 (1914), wherein the subcontractor performed strictly in compliance with the plans. The structure being erected collapsed because of faulty design. The loss was held not to be the responsibility of the subcontractor in view of the fact that he had performed in strict compliance with the plans and specifications, which were defective. Also, *see Ericksen v. Edmonds School Dist. 15*, 13 Wn.2d 398, 125 P.2d 275 (1942), in which the court said at page 408:

> [W]here a contractor is required to build in accordance with plans and specifications furnished by the owner, the

latter impliedly guarantees that the plans are workable and sufficient.

Secondly, appellant contends that it is relieved of responsibility because it was Puget Power which ordered the change from the cement grout to sand. The trial court found that Puget Power insisted on the change and that appellant required respondent to comply. This finding is supported by the evidence. It is not material who originated the order since it fairly appears that appellant passed it along as a change in the contract it had with respondent. *Huetter v. Warehouse & Realty Co., supra.*

The third contention is that respondent is responsible for the damage to the pipe because of the indemnity clause of the contract. It reads:

> The Contractor shall indemnify and save harmless the Company from any and all loss, damage and liability for injury to persons or property in any manner arising from the conduct of work hereunder.

■ The trial court determined that this provision applied to third-party claims, not to the damage to appellant's conduits caused by the unworkability of its plans as amended. The rule of interpretation of construction contract indemnity is that the indemnitor is entitled to have his undertaking strictly construed, particularly in those cases in which the agreement was prepared by the indemnitee, as was done in this case. In Washington the rule has been stated as follows:

> ". . . Contracts of indemnity, therefore, must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed. To this end they should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design, nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability within the scope or spirit of their terms."

*Union Pac. R. R. v. Ross Transfer Co.,* 64 Wn.2d 486, 392 P.2d 450 (1964). *See also, Continental Cas. Co. v. Municipality of Metropolitan Seattle,* 66 Wn.2d 831, 405 P.2d 581 (1965). The cases cited by appellant in its brief which

consider similar indemnity clauses in construction contracts all have to do with third-party claims. Illustrative of these are: *Cope v. J. K. Campbell & Associates, Ltd.,* 71 Wn.2d 453, 429 P.2d 124 (1967); *Continental Cas. Co. v. Municipality of Metropolitan Seattle, supra; Union Pac. R. R. v. Ross Transfer Co., supra; Griffiths v. Henry Broderick, Inc.,* 27 Wn.2d 901, 182 P.2d 18, 175 A.L.R. 1 (1947).

It is apparent from these cases that the purpose of the indemnity clause in this type of construction contract is not to share loss but to assign responsibility for certain risks to one of the parties. It is inconceivable that respondent would assume all risks incident to the performance of the contract, including damage sustained to property of appellant caused by the unworkability of appellant's own plans and orders. If appellant had wished respondent to assume the responsibility for its mistakes, present or future, the undertaking could easily have been expressed in the contract which it drew. We believe, with the trial court, that the purpose of the indemnity clause on this occasion was to place responsibility for third-party claims upon respondent and not, as contended by appellant, to extend blanket coverage to any mishap of any nature arising from the conduct of the work.

The fourth contention charges respondent with the responsibility for the loss because it proposed that the conduits be suspended from wooden frames rather than in a fiber liner as originally specified. Appellant's expert witness testified that use of the liner would have reduced the effect of the sandblasting upon the conduits. But there was other evidence that it would then have been necessary to place sand around the conduits inside the liner to insure a solid fit. The question thus raised was one of fact for the trial court, and is not for appellate redetermination. Moreover, appellant agreed to the change in the contract.

Respondent assigns error on cross-appeal to the refusal of the trial court to allow a profit on the extra work, but does not set out its proposed findings in this regard as required

by CAROA 43. The question of profit may therefore not be considered. *Koon v. Koon,* 50 Wn.2d 577, 313 P.2d 369 (1957).

Affirmed.

HOROWITZ, A. C. J., and UTTER, J., concur.

Petition for rehearing denied October 5, 1970.

Review denied by Supreme Court October 28, 1970.