[No. 51545-0. En Banc. December 12, 1985.]

BETTE MCDOWELL, *as Guardian ad Litem, Plaintiff,* v. THE AUSTIN COMPANY, *Respondent,* CANRON CORPORATION, *Petitioner.*

*Lane, Powell, Moss & Miller,* by *Robert W. Thomas* and *Nancy McCready Higgins,* for petitioner.

*Merrick, Hofstedt & Lindsey, P.S.,* by *Thomas V. Harris,* for respondent.

UTTER, J.—The Austin Company, a general contractor, seeks indemnity from Canron Corporation, a subcontractor, for a settlement payment to Canron's injured employee. The trial court dismissed Austin's claim. The court concluded that the terms of the indemnity clause executed by Austin, the indemnitee, and Canron, the indemnitor, do not clearly obligate Canron to indemnify Austin against liabilities caused by the concurrent negligence of the parties. The Court of Appeals reversed and remanded. That court ruled that the language of the indemnity clause includes circumstances of concurrent negligence. We affirm the Court of Appeals.

The Boeing Company hired the respondent, the Austin Company, as the general contractor for a construction project. Austin in turn hired the appellant, Canron Corporation, as a subcontractor to perform steel erection work. Austin and Canron executed a subcontract with the following provision:

ARTICLE 8: INSURANCE

. . .

(b) Subcontractor [Canron] agrees to indemnify and save harmless Owner and Austin against *all liability* for personal injury, including death resulting therefrom, sustained by any person directly or indirectly employed by

Subcontractor or its subcontractors, *caused* or alleged to have been caused, directly or indirectly, by an act or omission, negligent or otherwise, *by Owner or Austin* or persons directly or indirectly employed by them, and to assume the defense of any action brought by persons so injured or their personal representatives against Owner or Austin to recover damages for such injuries.

(Italics ours.) Clerk's Papers, at 374.

In addition, Canron agreed in subsection (c) of article 8 to indemnify the Owner and Austin for injuries sustained by "other" persons where such injuries had been caused by Canron, regardless of concurrent or other causation by anyone else, including Austin.

On March 16, 1979, Walter K. Hawes, who was employed by Canron as an ironworker, fell approximately 115 feet to the ground and suffered serious injuries. Evidently, Hawes was not using a safety line. Bette McDowell, guardian ad litem for Hawes, sued Austin to recover damages for Hawes' injuries. Austin tendered defense of the case to Canron, based on article 8(b) of the subcontract between Austin and Canron.

Canron rejected Austin's tender of the defense. Austin then filed a third party complaint against Canron. Prior to trial, Austin and Canron settled the claim for $1,899,000. Canron paid $1,329,300 of the total. Then, in April 1980, Austin and Canron entered into a written "stand–still agreement," in which they agreed to reserve for later determination which of them would be ultimately responsible for the settlement.

Austin subsequently filed a motion for summary judgment, arguing that Canron was obligated under article 8(b) of the subcontract to indemnify Austin for Austin's contribution. Canron filed a cross motion for summary judgment, contending that it was not liable for any part of the settlement, and seeking a recovery from Austin for the amount Canron had contributed. In a judgment dated August 25, 1982, the trial court denied Austin's motion, and granted Canron's. The trial court reasoned that the language of 8(b)

did not provide for indemnification of injuries caused in part by Canron's conduct.

Austin appealed. The Court of Appeals reversed and remanded. *McDowell v. Austin Co.,* 39 Wn. App. 443, 693 P.2d 744 (1985). The court held that the indemnity clause requires Canron to indemnify Austin for any liability that Austin might have. The court also held, however, that a factual question persists as to whether the injuries were a result of Austin's sole negligence. If so, the court said, the indemnity agreement would be rendered ineffective by RCW 4.24.115.[1]

Canron appealed to this court. It argues that clause 8(b) is ambiguous on the issue of indemnification against concurrent negligence. Canron relies on several Washington decisions to assert that the ambiguities of 8(b) should be construed against Austin, who is both the indemnitee and the drafter of the clause. *See, e.g., Northern Pac. Ry. v. Sunnyside Vly. Irrig. Dist.,* 85 Wn.2d 920, 540 P.2d 1387 (1975); *Tyee Constr. Co. v. Pacific Northwest Bell Tel. Co.,* 3 Wn. App. 37, 472 P.2d 411 (1970).

The Court of Appeals correctly rejected this argument. Parties are free to establish liability instead of negligence as the triggering mechanism of an indemnity contract. *See, e.g., Continental Cas. Co. v. Municipality of Metro Seattle,* 66 Wn.2d 831, 836, 405 P.2d 581 (1965) ("[c]ausation, not negligence, is the touchstone"); *see also Jones v. Strom Constr. Co.,* 84 Wn.2d 518, 521, 527 P.2d 1115 (1974). Here, clause 8(b) provides by its terms that any liability borne by Austin that was caused—or allegedly caused—by Austin's conduct triggers Canron's duty to indemnify Austin completely. The trigger operates independently of how Austin's

---

[1]RCW 4.24.115, enacted in 1967, provides:

"A covenant, promise, agreement or understanding in . . . a contract or agreement relative to the construction . . . of, any building . . . or other structure . . . attached to real estate . . . purporting to indemnify against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the *sole negligence* of the *indemnitee,* his agents or employees is against public policy and is *void and unenforceable.*" (Italics ours.)

conduct caused the liability.

Canron also argues that the indemnity clause of its contract with Austin is unenforceable because it fails to express clearly an intent that Canron indemnify Austin in circumstances of concurrent negligence. It claims that the provision binds it to indemnify Austin only for employees' injuries caused by Austin alone. Canron suggests that to bind it to indemnify for liability caused by concurrent negligence, 8(b) would have to read "Subcontractor agrees to indemnify . . . Austin against all liability . . . caused . . . by Austin *or Canron.*"

Canron bases its argument on *Calkins v. Lorain Div. of Koehring Co.,* 26 Wn. App. 206, 613 P.2d 143 (1980). That court emphasized that public policy disfavors allowing an indemnitee to contract away liability resulting from its own negligence, and courts will enforce such agreements only if expressed in clear terms. The court declared:

> Where agreements provide indemnity based on concurrent negligence, indemnitees are protected against a liability exposure created by their own negligence. As in situations where the law allows persons to indemnify themselves against liability arising from their sole negligence, an intent to indemnify for concurrent negligence must be clearly expressed.

26 Wn. App. at 210. The court held the indemnity clause at issue unenforceable because it was ambiguous in three respects: It failed to state expressly an intent (1) to deprive the indemnitor of his immunity as an employer under the Industrial Insurance Act, (2) to provide indemnity for concurrent negligence, and (3) to provide indemnity in the particular circumstances of the case.

Decisions of this court support the *Calkins* court's disfavor of contracts to indemnify a party against losses caused by its own negligence. *See, e.g., Griffiths v. Henry Broderick, Inc.,* 27 Wn.2d 901, 182 P.2d 18, 175 A.L.R. 1 (1947); *Jones v. Strom Constr. Co.,* 84 Wn.2d at 520–21. Courts of other jurisdictions agree: "[I]t is a long–established general rule that contracts will not be construed to indemnify a

person against his own negligence unless such intention is expressed in clear and unequivocal terms." Annot., *Liability of Subcontractor Upon Bond or Other Agreement Indemnifying General Contractor Against Liability for Damage to Person or Property,* 68 A.L.R.3d 7, 69 (1976). At least one court has stated that the purpose of this rule is to prevent injustice, and to insure that a contracting party has fair notice that a large and ruinous award can be assessed against it solely by reason of negligence attributable to the other contracting party. *Joe Adams & Son v. McCann Constr. Co.,* 475 S.W.2d 721, 722 (Tex. 1971).

Some courts also agree with *Calkins'* second basis for its holding. Because of the disfavor of indemnification of a party against its own negligence, courts have stated that they will not enforce an indemnity provision to indemnify a concurrently negligent indemnitee unless the obligation is expressed in clear and unequivocal language. Annot., *supra* at 126. *See also Waller v. J.E. Brenneman Co.,* 307 A.2d 550 (Del. Super. Ct. 1973).

However, these policy considerations do not require that the Austin–Canron agreement be held unenforceable for failing to expressly mention concurrent negligence. Provision 8(b) provided fair notice to Canron that it would be liable for "all liability" to Canron's employees caused by Austin's conduct. In this situation, the *Calkins* rule is not necessary for notifying Canron of its role as insurer for the indemnitee's liability. For other cases in which this court has held that an indemnity clause encompassed circumstances of concurrent negligence, *see Cope v. J.K. Campbell & Assocs.,* 71 Wn.2d 453, 429 P.2d 124 (1967); *Union Pac. R.R. v. Ross Transfer Co.,* 64 Wn.2d 486, 392 P.2d 450 (1964). At least one other court has noted that parties need not expressly mention concurrent negligence when they instead expressly agree to indemnify the indemnitee against its own negligence. *MacDonald & Kruse, Inc. v. San Jose Steel Co.,* 29 Cal. App. 3d 413, 419, 105 Cal. Rptr. 725 (1972).

This court has long preferred to enforce indemnity

agreements as executed by the parties. *See, e.g., Griffiths v. Henry Broderick, Inc.,* 27 Wn.2d at 904–06, 910; *Redford v. Seattle,* 94 Wn.2d 198, 206–07, 615 P.2d 1285 (1980). We have established specific limits to the enforceability of indemnity contracts to accommodate the statutory mandates of the Industrial Insurance Act, RCW Title 51, *see Brown v. Prime Constr. Co.,* 102 Wn.2d 235, 684 P.2d 73 (1984), and of RCW 4.24.115, *see Brame v. St. Regis Paper Co.,* 97 Wn.2d 748, 649 P.2d 836 (1982). However, as we stated in *Northwest Airlines v. Hughes Air Corp.,* 104 Wn.2d 152, 157–58, 702 P.2d 1192 (1985), the general rules that disfavor an agreement to indemnify an indemnitee against its own negligence do not render such a clause void or unenforceable as a matter of law. Instead, "[w]hat these rules require is that . . . the agreement must be clearly spelled out." 104 Wn.2d at 158. Parties rely on indemnity agreements for allocating the responsibility to purchase insurance when a construction project is initiated. Here, Canron and Austin clearly spelled out their allocation of responsibilities. It is not for this court to frustrate such a planning device.

Clause 8(b) would have little use if it were construed to obligate Canron to provide indemnity to Austin only when Austin was solely negligent. RCW 4.24.115 would make the clause almost totally unenforceable.

> ". . . Contracts of indemnity, therefore, must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed. To this end they should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design, nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability within the scope or spirit of their terms."

*Union Pac. R.R. v. Ross Transfer Co.,* 64 Wn.2d 486, 488 . . . (quoting from 27 Am. Jur. *Indemnity* § 13, at 462 (1940)); . . .

*McDowell v. Austin Co.,* 39 Wn. App. 443, 448–49, 693 P.2d 744 (1985).

This court will enforce a contract that clearly requires

indemnification of the indemnitee against losses caused by its own negligence when enforcement of that clause does not violate RCW 4.24.115. We therefore affirm the Court of Appeals.

DOLLIVER, C.J., and BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.