Honorable Debbie Regala State Senator, 27th District P.O. Box 40427 Olympia, WA 98504-0427.
Dear Senator Regala:
By letter previously acknowledged, you have requested our opinion on the following questions:
 1. When a city and a county negotiate an interlocal agreement under RCW 39.34.180(2), can the term "cost of services" include the cost of potential tort liability?
 2. When a city and a county negotiate an interlocal agreement under RCW 39.34.180(2), could the interlocal agreement lawfully include a provision in which the city agrees to hold the county harmless for the county's tort liability?
 BRIEF ANSWER
1. Yes, to the extent that a county anticipates expending funds to manage tort liability and identifies the management of a potential increase in such liability as a source of additional expense, the parties may include those expenses as cost of services it must consider under RCW 39.34.180(2).
[original page 2] 2. In general, within an interlocal agreement under RCW 39.34.180, a city and county could agree that the city would indemnify and hold harmless the county except for intentional injuries.
 ANALYSIS 1. When a city and a county negotiate an interlocal agreementunder RCW 39.34.180(2), can the term "cost of services" includethe cost of potential tort liability?
Your first question requires us to construe the meaning of the term "cost of services", as used in RCW 39.34.180(2). RCW39.34.180 provides, in part:
 (1) Each county, city, and town is responsible for the prosecution, adjudication, sentencing, and incarceration of misdemeanor and gross misdemeanor offenses committed by adults in their respective jurisdictions, and referred from their respective law enforcement agencies, whether filed under state law or city ordinance, and must carry out these responsibilities through the use of their own courts, staff, and facilities, or by entering into contracts or interlocal agreements under this chapter to provide these services. Nothing in this section is intended to alter the statutory responsibilities of each county for the prosecution, adjudication, sentencing, and incarceration for not more than one year of felony offenders, nor shall this section apply to any offense initially filed by the prosecuting attorney as a felony offense or an attempt to commit a felony offense.
 (2) The following principles must be followed in negotiating interlocal agreements or contracts: Cities and counties must consider (a) anticipated costs of services; and (b) anticipated and potential revenues to fund the services, including fines and fees, criminal justice funding, and state-authorized sales tax funding levied for criminal justice purposes.
 (3) If an agreement as to the levels of compensation within an interlocal agreement or contract for gross misdemeanor and misdemeanor services cannot be reached between a city and county, then either party may invoke binding arbitration on the compensation issued by notice to the other party. In the case of establishing initial compensation, the notice shall request arbitration within thirty days.
(Emphasis added.)
The term "cost of services" is not defined in RCW 39.34 or elsewhere in state statute. It is also not defined in Black's Law Dictionary or in the standard dictionary. However, "cost" is defined as "[a]n amount paid or required in payment for a purchase; price." The American Heritage Dictionary 329 (2d college ed. 1982). "Service" is defined as "[t]he occupation or duties of a servant; employment in duties or work for another, especially for a government." Id. at 1121. In the context of RCW 39.34.180(1) and (2), "cost" of "services" would mean the required payment or price for conducting the work or carrying out the duties necessary for the [original page 3] prosecution, adjudication, sentencing, and incarceration of misdemeanor or gross misdemeanor offenses.
To determine whether the cost of potential tort liability could be included in the "cost of services" that must be considered by the parties under RCW 39.34.180(2), we will review an earlier Attorney General Opinion (AGO) regarding payment due for services rendered pursuant to an interlocal agreement under RCW 39.34.030, case law, statutes, and earlier AGOs regarding the equitable apportionment of costs of criminal justice as they apply to misdemeanor and gross misdemeanor offenses occurring within the city boundaries.
First, we believe it would be helpful to review the context in which these costs must be considered. In 2000, we opined that (1) nothing in RCW 39.34.180(1) would require a county to agree to contract with a city or town if the county simply did not wish to enter into an interlocal agreement on any terms; (2) a county may decline to enter into an agreement at all; and (3) this decision is not subject to arbitration. However, if the county, having agreed to contract, disagrees with the city or town about the appropriate level of compensation, the binding arbitration provisions of RCW 39.34.180(3) apply. AGO 2000 No. 2. Thus, these agreements are voluntary and are to be negotiated by the parties, subject to arbitration regarding the level of compensation.
Second, our office has opined that if a county provides service to a town under an interlocal agreement entered into under RCW39.34.030, the town must pay true and full value for such services. AGO 1985 No. 17. This opinion was based on RCW43.09.210, which provides, in part:
 All service rendered by, or property transferred from, one department, public improvement, undertaking, institution, or public service industry to another, shall be paid for at its true and full value by the department, public improvement, undertaking, institution, or public service industry receiving the same, and no department, public improvement, undertaking, institution, or public service industry shall benefit in any financial manner whatever by an appropriation or fund made for the support of another.
(Emphasis added.) Applying RCW 43.09.210 to interlocal agreements under RCW 39.34.180(2), the cities and counties must consider the true and full value of services rendered. As we have previously opined, true and full value has a flexible meaning, depending on the circumstances of the transaction, and governments are free to negotiate the terms of an interlocal agreement while still honoring the "full value" requirement. AGO1997 No. 5, at 3. Thus, RCW 43.09.210 and RCW 39.34.180(2) are consistent, requiring that cities and counties must consider the full value of the services in their negotiations but not requiring that any specific cost be included.
This is also consistent with the Court Improvement Act and case law interpreting it. In 1984, the Legislature enacted the Court Improvement Act, because the cost of operating the court system was increasing at all levels. Final Legislative Report, 48th Leg., at 195 (Wash. 1984) [original page 4] (Substitute Senate Bill 4430). The legislative history of the 1984 Court Improvement Act is extensively reviewed in AGO 2000 No. 2, at 1-3. In summary:
 [T]he 1984 act recognizes that counties will bear the burden of criminal activity costs if municipalities terminate their municipal courts and repeal their municipal criminal codes. Final Legislative Report, 48th Leg. (1984), at 195, 196 (Substitute Senate Bill 4430). If municipalities opted to do so, they were required to contract with the counties in order to shoulder some of the financial burden that would otherwise fall on the counties.
Id. at 2 (emphasis added).
The Washington Supreme Court construed RCW 3.50.800, the Court Improvement Act, noting that the 1984 Legislature prohibited municipalities from repealing that portion of their municipal codes defining crimes or terminating their municipal courts without making provision for the fiscal impact of such action with the affected counties. Whatcom Cy. v. City of Bellingham,128 Wn.2d 537, 909 P.2d 1303 (1996). The Court held:
 The approach in RCW 3.50.800 is similar to that taken in other circumstances of potential interlocal conflict over costs. We have upheld the legislative direction to compel arbitration of the fiscal impact of public health costs where a city and county could not agree. Thus, the Legislature in 1984 evidenced a strong policy to prevent cities from freely imposing the costs of their criminal justice activities on counties by repealing municipal criminal codes or terminating their municipal courts. The Legislature did not forbid cities from abandoning a role in the criminal justice system, but it did require an agreement on the handling of the fiscal impact of such an action between the city and affected county government.
Id. at 545-46 (emphasis added) (citations omitted).
A few months later, the Legislature enacted RCW 39.34.180. It amended the Interlocal Cooperation Act to
 require each county, city or town to be responsible for the costs incident to misdemeanors and gross misdemeanor offenses that occur in their respective jurisdictions and that are committed by adults. The only exception to this is by contract or interlocal agreement. The negotiation of the agreement must consider costs and revenues incident to the provision of these criminal justice services. If an agreement on the level of compensation cannot be reached, either party may invoke binding arbitration.
Final Legislative Report, 54th Leg., at 160 (Wash. 1996) (Engrossed Substitute Senate Bill 6211) (emphasis added).
[original page 5] Throughout the effort to equitably address local government criminal justice costs, there has been an emphasis on addressing the "burden of", the "fiscal impact of", and the "costs incident to" shifting the responsibilities from a city to the county. This emphasis leads us to conclude that in enacting RCW 39.34.180(2), the Legislature intended that the parties consider the full amount anticipated to be paid or required to be paid by the county in the prosecution, adjudication, sentencing, and incarceration of misdemeanor and gross misdemeanor offenses committed by adults within the jurisdiction to be covered by the interlocal agreement. In determining whether or not to enter into an interlocal agreement, a county would consider the fiscal impacts of administering criminal laws, including the costs associated with increased liability risks to the county. Those fiscal impacts might include insurance premiums or other methods of managing the risks that any government incurs in providing services, such as criminal justice administration. While RCW 39.34.180(2) requires that the full fiscal impacts of the agreement must be considered, RCW43.09.210 allows for negotiation of what it may be paid for "full value".
To the extent that a county anticipates expending funds to manage tort liability and identifies the management of a potential increase in such liability as a source of additional expense, the parties may include those expenses as a cost of services it must consider under RCW 39.34.180(2). Thus, we answer your first question in the affirmative.
2. When a city and a county negotiate an interlocal agreementunder RCW 39.34.180(2), could the interlocal agreement lawfullyinclude a provision in which the city agrees to hold the countyharmless for the county's tort liability?
Your opinion request indicates that the focus of your concern in this respect is liability that may arise from the local government's responsibility to supervise offenders' compliance with the terms of their criminal sentences, a function that would fall within "responsib[ility] for . . . sentencing" under RCW39.34.180(1). Washington courts have recognized a duty to use reasonable care in supervising offenders under community service programs. See Joyce v. State, 155 Wn.2d 306, 119 P.3d 825
(2005) (in community supervision role, state owed a duty, based on "take charge" relationship with felon, to take reasonable precautions to protect against reasonably foreseeable dangers posed by dangerous propensities of offender); Hertog v. City ofSeattle, 138 Wn.2d 265, 979 P.2d 400 (1999) (city and its probation counselors were in charge of monitoring probationers to ensure that the conditions of probation were being followed and had a duty to report violations to the court; county and its pretrial release counselor had a duty based on the counselor's responsibility of monitoring defendant for compliance with the conditions of his release); Bishop v. Miche, 137 Wn.2d 518,973 P.2d 465 (1999) (county probation officer required to monitor probationer for compliance with conditions of probation has a duty to use reasonable care in adequately monitoring and reporting violations); and Taggart v. State, 118 Wn.2d 195,822 P.2d 243 (1992) (parole officers have a duty, based on the "take charge" relationship to protect others from reasonably foreseeable dangers engendered by parolees' dangerous propensities). As you noted in your letter, the Court of Appeals recently held, in an unpublished decision, that a parole officer taking purely supervisory or administrative actions is not protected by quasi-judicial immunity and, based on facts indicating a "take charge" supervisory relationship, owed a duty to car accident victims of supervised probationer. Under[original page 6] this case law, the county's potential liability is increased to the extent it assumes responsibility for criminal justice sentencing activities from a city through an interlocal agreement under RCW 39.34.180.[1]
You ask whether liability, which would stem from the county's actions, can be shifted to the city by agreement.[2] The general rule in Washington is that a party may contractually indemnify against loss resulting from that party's own negligence as long as the intention is expressed in clear and unequivocal terms, unless prohibited by statute or public policy. NorthwestAirlines v. Hughes Air Corp., 104 Wn.2d, 152, 702 P.2d 1192
(1985); Seabed Harvesting, Inc. v. Dep't of Natural Res.,114 Wn. App. 791, 796, 60 P.3d 658, 661 n. 5 (2002). The Northwest
Court thoroughly considered the question of public policy and came to the conclusion that parties were free to agree to shift responsibility for a party's own negligence.[3]
Washington courts also have held that parties are free to establish liability instead of negligence as the triggering mechanism of an indemnity contract, and the trigger may operate independently of how the indemnitee's conduct causes the liability. McDowell v. The Austin Co., 105 Wn.2d 48,710 P.2d 192 (1985). While the McDowell Court considered a contract indemnification provision under which the subcontractor (Canron) indemnified the contractor (Austin) against all liability for personal injury, the Court did not have to reach the issue of whether such indemnification could include Austin's gross negligence or an intentional tort. However, the Court did note:
 [original page 7] Parties rely on indemnity agreements for allocating the responsibility to purchase insurance when a construction project is initiated. Here, Canron and Austin clearly spelled out their allocation of responsibilities. It is not for this court to frustrate such a planning device.
McDowell, 105 Wn.2d at 196.
Washington courts have only reached the issue of whether contracts attempting to shift liability for intentional acts are valid in litigation over insurance contract coverage. The Court of Appeals has held that gross negligence or willful and wanton conduct may be covered by insurance where there has been no actual intent to injure. Queen City Farms, Inc. v. Cent. Nat'lIns. Co. of Omaha, 64 Wn. App. 838, 857, 827 P.2d 1024 (1992). This is consistent with other states, which have held that indemnity provisions shifting sources of compensation without restricting the injured party's ability to recover are not contrary to public policy, and they are valid unless they purport to indemnify a party for damages flowing from an injury that was intentional. St. Paul Fire Marine Ins. Co. v. UniversalBuilders Supply, 409 F.3d 73, 86 (2d Cir. 2005).
Based on Washington case law, we believe that in general, two parties may enter into an agreement in which one party indemnifies and holds harmless the second party, except for intentional actions of the second party. Cities are permitted to enter into contracts which are proper and reasonably necessary to enable them to perform functions expressly conferred and essential to enable them to perform fully the duties of a local government. Greater Harbor 2000 v. City of Seattle,132 Wn.2d 267, 283, 937 P.2d 1082 (1997) (citing 10 Eugene McQuillin,The Law of Municipal Corporations § 29.05 (3d ed. rev. 1990)). Logically, the ability of the city to enter into contracts includes the ability to negotiate the terms and conditions of the contracts, including the essential terms of contract price, which is affected by the allocation of risk. There is nothing in state statute that circumscribes the ability of the city to negotiate the allocation of risk in a contract beyond the limits described above in the case law and RCW 4.24.115;[4] however, the authority of any specific city will depend on its own specific source of authority and ordinances.[5]
In general, within an interlocal agreement under RCW 39.34.180, a city and county could agree that the city would indemnify and hold harmless the county except for intentional injuries;[original page 8] however, the answer for any specific city will depend on its sources of authority and ordinances. We express no opinion as to whether an indemnification agreement would be good policy or would reasonably allocate financial liability as between a city and a county. These would be matters committed to the best judgment of the parties negotiating the agreement.
We trust the foregoing will be of assistance.
Sincerely,
ROB McKENNA Attorney General
Terese (T.C.) Neu Richmond Senior Assistant Attorney General
:pmd
[1] Harvey v. County of Snohomish, 124 Wn. App. 806,103 P.3d 836 (2004), considered tort liability of a county that had participated in an interlocal cooperative agreement under RCW39.34.030 to form an entity that handled 911 calls for several cooperating agencies. The Court held that in a tort action by an assault victim who made a 911 call, the county continued to have legal obligations or responsibilities that were not removed through the interlocal cooperation agreement, due to a continuing agency relationship and the continuing responsibilities established in RCW 39.34.030(5). We believe this case is inapposite in that it addresses a situation in which several agencies form a new entity under the authority of a provision of the Interlocal Cooperation Act other than RCW 39.34.180.
[2] Your question uses the term "hold harmless," which could be interpreted (a) narrowly to mean that the city will not seek reimbursement from the county for the city's losses or (b) broadly to mean that the city will protect the county from any losses. In our response, we analyze the broader concept and use the term "indemnification." "Indemnity agreements are essentially agreements for contractual contribution, whereby one tortfeasor, against whom damages in favor of an injured party have been assessed, may look to another for reimbursement." Stocker v.Shell Oil Co., 105 Wn.2d 546, 549, 716 P.2d 306 (1986) (citation omitted).
[3] RCW 4.24.115 invalidates some agreements to indemnify against liability for negligence relative to construction, alteration, improvement, etc., of structure or improvement attached to real estate. However, that statute is not relevant to criminal justice activities.
[4] We do not believe that the ruling in Barendregt v. WallaWalla Sch. Dist. 140, 26 Wn. App. 246, 611 P.2d 1385 (1980), is dispositive in this case. In Barendregt, the court held that an employee of a state prison lacked statutory authority to require the state to indemnify a school district as part of a contract between the prison and the district for personnel to teach at the prison. That case is generally cited for the proposition that an administrative agency created by statute has only those powers expressly granted or necessarily implied by that statute. SeeState v. Cook, 125 Wn. App. 709, 106 P.3d 251, 258 (2005). TheBarendregt Court was not addressing the authority to contract under RCW 39.34 — it was addressing the authority of a state administrative agency; most importantly, it was not addressing a contract under a statutory provision such as RCW 39.34.180, which was intended to require the parties to consider all fiscal impacts of allocating the criminal justice administration.
[5] See AGO 2003 No. 11, at 2-3, for a review of the classification of municipalities in Washington State and the sources and breadth of authority.