IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KING COUNTY,<br><br>    Plaintiff,<br><br>    v.<br><br>WALSH CONSTRUCTION COMPANY II, LLC, an Illinois limited liability company,<br><br>    Respondent,<br><br>MEARS GROUP INC., a Delaware corporation,<br><br>    Appellant,<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a foreign insurance corporation,<br><br>    Defendant,<br><br>FEDERAL INSURANCE COMPANY and LIBERTY MUTUAL INSURANCE COMPANY, Bond No. 82381732-906003393; and UNDERGROUND SOLUTIONS, INC., a Delaware corporation,<br><br>    Third-Party Defendants. | No. 86503-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Walsh Construction Company II LLC filed a pass-through claim against Mears Group Inc. and later voluntarily dismissed it after the original claimant dismissed its claims against Walsh. Mears then sought attorney

fees, costs, and expenses as the prevailing party under the subcontract's indemnification provision, which requires a final determination of fault. The trial court denied Mears' motion. Because Walsh's indemnity claim was no longer live and no determination of fault occurred, the trial court did not err and we affirm.

## FACTS

The underlying facts giving rise to this appeal are set out in detail in this court's published opinion in the case between King County and Walsh Construction Company II as the general contractor, and are only briefly summarized here. *See King County v. Walsh Constr. Co. II*, *LLC*, 27 Wn. App. 2d 156, 158-61, 532 P.3d 182, *review denied,* 2 Wn.3d 1006 (2023). That case arose out of a public works contract requiring Walsh to construct and install a conveyance pipeline for the county. *Id.* at 158.

Walsh was hired by King County to serve as general contractor for the project. Walsh then entered into a subcontract with Mears Group Inc. to provide all equipment and labor for the pipeline's construction and installation. When the pipeline broke, King County paid Walsh for repairs, but later filed suit against Walsh for breach of contract and breach of warranty. *Id.* In its complaint, King County identified Walsh and Mears as the parties responsible for the pipeline damage. Walsh, in turn, tendered defense and indemnity to Mears pursuant to the subcontract, which contained the following indemnification provision:

> 9.1. Indemnification. To the fullest extent permitted by law, *Subcontractor shall indemnify, defend* (with counsel reasonably satisfactory to Contractor), *and save harmless* Owner, Owner's Representative, Architect/Engineer, Contractor, and Contractor's

surety, as well as any individual and/or entity that Contractor is required by contract to indemnify, defend and/or hold harmless with respect to the Subcontract Work, and their partners, , [sic] parents, members, subsidiaries, related corporations, officers, directors, agents and employees, and each of them, (hereafter collectively "Indemnified Parties" and individually "Indemnified Party") *from and against any and all suits, actions, legal or administrative proceedings, claims, debts, demands, damages, ,* [sic] *liabilities, judgments, fines, penalties, interest, reasonable attorney's fees, costs and expenses of whatever kind or nature (hereafter "Indemnified Claims") to the extent caused by any fault or negligence whether active or passive of Subcontractor*, or anyone acting under its direction, control, or on its behalf or for which it is legally responsible, in connection with or incident to the Subcontractor's Work or, to the extent due to Subcontractor's fault, arising out of any failure of Subcontractor to perform any of the terms and conditions of this Subcontract; without limiting the generality of the foregoing, the same shall include injury or death to any person or persons (including Subcontractor's employees) and damage to any property, regardless of where located, including the property of Owner and Contractor. *Subcontractor's obligation to provide a defense for an Indemnified Party shall arise regardless of the merits of the matter and shall continue until a final determination of fault is made*. Notwithstanding any provision in the Contract Documents to the contrary, Subcontractor's obligation to indemnify, defend and hold harmless an Indemnified Party shall apply only to Indemnified Claims arising during performance of the Subcontractor's Work and only to the extent caused by the negligence or other fault of Subcontractor or those for whom Subcontractor is legally liable. *The prevailing party shall be entitled to recover from the non-prevailing party the actual attorney fees and court costs and all other costs, expenses and liabilities incurred by the prevailing party in an action brought to enforce all or any part of this Indemnification Article*. The obligations described in this paragraph shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this paragraph.

(Emphasis added) (boldface omitted). Mears rejected Walsh's tender of indemnity but accepted the tender of defense under a reservation of rights, adding terms and qualifications. Specifically, Mears stated the following:

Section 9.1 provides for the prevailing party to recover attorneys' fees and costs "to enforce all or any part of this indemnification

Article." *Should it be determined that Mears has no defense and indemnity obligation, Mears reserves the right to seek recovery of its attorneys' fees, costs, and expenses from Walsh.*

(Emphasis added.) Walsh then filed a third-party complaint against Mears for breach of contract, breach of contractual obligation to save harmless, duty to defend, indemnity, performance bond, and attorney fees.[1] Walsh's indemnity claims were derivative pass-through claims from King County. Walsh repeatedly noted that its claims against Mears were "as alleged by King County," and it was "re-tender[ing] King County's claims to Mears." For the breach of indemnity claim, Walsh argued that Mears owed an obligation to indemnify "[i]n the event that Walsh pays or is legally adjudged to pay damages to King County as a result of alleged work negligently performed or performed with fault by Mears."

After extensive litigation, King County moved for partial summary judgment, which the trial court granted. Mears then filed its own motion for summary judgment to dismiss Walsh's claims, limit Mears' liability, and award Mears its prevailing party attorney fees and costs pursuant to the terms of the subcontract. However, the motion was continued pending Walsh's appeal of the trial court's order granting King County's motion. The court never considered or decided the arguments Mears raised in its motion.

Meanwhile, this court reversed and remanded the trial court's order that granted King County's motion. *Walsh Constr. Co. II*, 27 Wn. App. 2d at 165. On remand, King County voluntarily dismissed its claims against Walsh under CR 41. Walsh then moved to voluntarily dismiss its derivative third-party claims against

---

[1] Walsh filed similar claims against another subcontractor, Underground Solutions Inc. (UGSI).

Mears. Mears did not oppose dismissal, but asked the trial court to retain jurisdiction to consider its request for prevailing party fees. Walsh responded, arguing that its third-party complaint was based solely on "claims as alleged by King County" and the only fee provision in the subcontract was in the indemnity clause. The trial court granted dismissal without prejudice, but it retained jurisdiction for Mears to file its fee request within 10 days.

10 days later, Mears filed a notice of hearing for its fee request and a fee declaration with timesheets that appeared to support a request for $505,733 in fees and costs, but did not file an accompanying motion. Walsh then moved to shorten time, arguing that any fee motion from Mears would not be timely and the trial court should not consider it. Walsh further asserted that Mears would need to show excusable neglect before the court could hear the motion.

15 days after the trial court's deadline, Mears filed its motion for fees, costs, and expenses. The following day, Mears sought to enlarge time, claiming that it had needed more time to gather the necessary information. The trial court found excusable neglect and allowed the late-filed fee motion, noting that Walsh was not prejudiced by the delay, but ultimately denied it.

Mears timely appealed.

ANALYSIS

Mears' appeal seeks solely a determination of whether a fee award applies in a pass-through indemnification action when resolved by voluntarily dismissal of the claims. It is undisputed that the subcontract at issue here lacks a stand-alone

attorney fee provision. The only relevant fee provision appears in the indemnity clause that allows for fee recovery in actions to enforce indemnification rights.

Mears avers that it is entitled to fees because it qualifies as the prevailing party because Walsh dismissed its claims, and the indemnity provision entitles the prevailing party to fees and costs. Walsh, in contrast, contends that the indemnity provision does not apply because Mears' duty to indemnify, defend, and hold Walsh harmless continues until a final determination of fault, which never happened here due to the voluntary dismissal based on the resolution in the original litigation.

Under Washington law, each side must bear their own attorney fees unless a contract, statute, or a recognized ground in equity authorizes a fee award.[2] *See Schmidt v. Coogan*, 181 Wn.2d 661, 679, 335 P.3d 424 (2014) (plurality opinion). This court applies a two-part standard of review to a trial court's denial of attorney fees: first, de novo review of the legal basis for awarding attorney fees, and then, an abuse of discretion review of the trial court's decision to award or deny attorney fees. *Park Place Motors, Ltd. v. Elite Cornerstone Constr., LLC*, 18 Wn. App. 2d 748, 753, 493 P.3d 136 (2021).

The interpretation of a contractual attorney fee provision is a legal question reviewed de novo. *See Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wn. App. 86, 97, 285 P.3d 70 (2012). Indemnity contracts

> "must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed. To this end they should neither, on the one hand, be so narrowly or technically

---

[2] Mears concedes that a statutory basis for attorney fees is not applicable and argues exclusively for attorney fees on a contractual ground, the bilateral fee provision. We accept Mears' concession.

interpreted as to frustrate their obvious design, nor, on the other hand, so loosely or inartificially as to relieve the obligor from a liability within the scope or spirit of their terms."

*Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173 Wn.2d 829, 835, 271 P.3d 850 (2012) (internal quotation marks omitted) (quoting *McDowell v. Austin Co.*, 105 Wn.2d 48, 53-54, 710 P.2d 192 (1985).

We interpret indemnity provisions using fundamental rules of contract construction, giving words their ordinary meaning. *Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*, 166 Wn.2d 475, 487, 209 P.3d 863 (2009). "'Where the terms of a contract are plain and unambiguous, the intention of the parties shall be ascertained from the language employed.'" *Cornish Coll. of Arts v. 1000 Va. Ltd. P'ship*, 158 Wn. App. 203, 231, 242 P.3d 1 (2010) (internal quotation marks omitted) (quoting *Marine Enters., Inc. v. Sec. Pac. Trading Corp.*, 50 Wn. App. 768, 773, 750 P.2d 1290 (1988)). To determine the parties' intent, we view "the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties." *Stender v. Twin City Foods, Inc.,* 82 Wn.2d 250, 254, 510 P.2d 221 (1973); *see also Berg v. Hudesman,* 115 Wn.2d 657, 666, 801 P.2d 222 (1990).

During oral argument before this court, Mears asserted that the subcontract distinguishes between defense and indemnity obligations and the duty to defend

continues until a final determination of fault, while indemnity does not.[3]  Mears claims that Walsh conflates these obligations and misinterprets the prevailing party provision.[4]  This piecemeal approach risks distorting the parties' agreed obligations.  We are required to read the contract as a whole and give effect to all provisions to ensure they function cohesively rather than allowing one clause to be construed in a way that nullifies or diminishes another.  *See Nishikawa v. U.S. Eagle High, LLC,* 138 Wn. App. 841, 849, 158 P.3d 1265 (2007) (holding contracts must be interpreted to harmonize all clauses that seem to conflict and give effect to all provisions).

Walsh contended at oral argument that the trial court properly denied Mears' motion because the indemnity provision was never triggered and the subcontract does not contain a bilateral indemnity provision.[5]  In its briefing, Walsh argues that the plain language of the indemnity provision requires Mears to defend and indemnify "until a final determination of fault is made."  The provision also obligates Mears to defend "any and all" claims, regardless of merit.  Because no final determination of fault was reached, Walsh avers that Mears has no contractual basis to claim fees.  Furthermore, Walsh asserts that Mears' expenses stemmed from defending its own work in the underlying action rather than enforcing the indemnity provision.  And, since the subcontract has no stand-alone prevailing-

---

[3] Wash. Ct. of Appeals oral arg., *Mears Grp., Inc. v. Walsh Constr. II, LLP,* No. 86503-0-I (Mar. 12, 2025), at 1 min., 37 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025031278/.
[4] *Id.* at 1 min., 47 sec.
[5] *Id.* at 15 min., 16 sec.

party fee provision,[6] the prevailing-party fee provision is only available for enforcing the indemnity clause.

Mears insists that it seeks only fees, costs, and expenses incurred in defending against Walsh's third-party lawsuit. Yet, Mears concedes in briefing that its fault had to be addressed in order to trigger an entitlement to fees under the indemnity provision and its indemnity obligation was limited to losses solely resulting from its own fault, even if the subcontract required a defense irrespective of fault. Still, it objects to limiting the prevailing party provision.

Mears does not qualify as a prevailing party in the indemnity action brought by Walsh here. Walsh's third-party complaint arose from the subcontract's indemnity clause, which required Mears to indemnify and defend Walsh in the underlying litigation "until a final determination of fault is made." The relevant portion of the subcontract states the following:

> 9.1. Indemnification. To the fullest extent permitted by law, Subcontractor shall indemnify, defend (with counsel reasonably satisfactory to Contractor), and save harmless . . . from and against *any and all suits*, actions, legal or administrative proceedings, claims, debts, demands, damages, , [sic] liabilities, judgments, fines, penalties, interest, reasonable attorney's fees, costs and expenses of whatever kind or nature (hereafter "Indemnified Claims") to the extent caused by any fault or negligence whether active or passive of Subcontractor . . . *Subcontractor's obligation to provide a defense for an Indemnified Party shall arise regardless of the merits of the matter and shall continue until a final determination of fault is made.*
> *. . . The prevailing party shall be entitled to recover from the non-prevailing party the actual attorney fees and court costs and all other costs, expenses and liabilities incurred by the prevailing party in an action brought to enforce all or any part of this Indemnification Article.*

---

[6] UGSI's subcontract, though not at issue here, included a stand-alone attorney fee provision. UGSI recovered its attorney fees after prevailing on summary judgment against Walsh, which had challenged the validity and enforceability of a contractual limitation of liability provision, and because Walsh had not produced any evidence to support any of its claims against UGSI, all of which were contract-based.

(Emphasis added) (boldface omitted). For the purposes of a contractual provision for an award of attorney fees, a prevailing party is usually one who secures judgment in its favor. *Crest Inc. v. Costco Wholesale Corp.*, 128 Wn. App. 760, 772, 115 P.3d 349, 355 (2005); *see also Eagle Point Condo. Owners Ass'n v. Coy*, 102 Wn. App. 697, 706, 9 P.3d 898 (2000); RCW 4.84.330 ("prevailing party" is defined as "the party in whose favor final judgment is rendered").

> A "final judgment" is "a court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs (and, sometimes, attorney's fees) and enforcement of the judgment." BLACK'S LAW DICTIONARY 971 (10th ed. 2014). A voluntary dismissal *is not* a final judgment by this definition when it "leaves the parties as if the action had never been brought." *Wachovia* [*SBA Lending, Inc. v. Kraft*, 165 Wn.2d 481, 492, 200 P.3d 683 (2009)].
> On the other hand, a voluntary dismissal *is* a final judgment when the court elects to dismiss with prejudice because then it does not leave the parties as if the action had never been brought.

*Elliott Bay Adjustment Co., Inc. v. Dacumos*, 200 Wn. App. 208, 214, 401 P.3d 473 (2017). The term "substantially prevails" is included in many attorney fee provisions and applies when neither party wholly prevails and the determination turns on the extent of the relief awarded to the parties. *See Mike's Painting, Inc. v. Carter Welsh, Inc.*, 95 Wn. App. 64, 68, 975 P.2d 532 (1999); *Crest Inc.*, 128 Wn. App. at 772; *Transpac Dev., Inc. v. Young Suk Oh*, 132 Wn. App. 212, 217, 130 P.3d 892 (2006).

Mears avers that Walsh's dismissal of all claims renders Mears the prevailing party. It relies on this court's opinion in *Walji v. Candyco Inc.,* 57 Wn. App. 284, 288, 787 P.2d 946 (1990) to argue that "[u]nder the general rule, the defendant is regarded as having prevailed when the plaintiff obtains a voluntary

nonsuit." It asserts that *Walji* explained that when determining the meaning of prevailing party in cases with a bilateral attorney fee provision, statutory fee provisions such as those in RCW 4.84.330 would not apply. While Mears is correct as to its characterization of that holding, *Walji* is factually distinct from the case before us and, thus, is not controlling here.

In *Walji*, Queen Anne Group filed a lawsuit to enforce a commercial lease against Candyco. 57 Wn. App. at 286. The lawsuit was subject to mandatory arbitration, where Queen Anne Group did not prevail. *Id.* Queen Anne Group then sought a trial de novo, and, just before trial, moved to amend its complaint after discovering that it had been administratively dissolved prior to the lawsuit. *Id.* It asked that its former shareholders be substituted as plaintiffs. *Id.* The trial court denied the motion but eventually allowed Queen Anne Group to take a nonsuit under CR 41(a)(2). *Id.* The court granted attorney fees to Candyco under a prevailing party attorney fee provision in the lease. *Id.* That provision stated that "'the prevailing party shall be entitled to a reasonable attorneys' fee and all costs and expenses expended or incurred in connection with such default or action.'" *Id.* at 287 (emphasis omitted).

On appeal, Queen Anne Group argued that the trial court erred in granting attorney fees to Candyco. *Id.* It contended that the definition of "prevailing party" in RCW 4.84.330 must be used in interpreting the lease provision. *Id.* RCW 4.84.330 defines "prevailing party" as "the party in whose favor final judgment is rendered." However, the court noted that Queen Anne Group cited no authority, or offered any compelling legal reason, for adopting the statutory definition of

- 11 -

"prevailing party" in interpreting the provision. *Id.* at 288. The court then stated, "At the time of a voluntary dismissal, *the defendant has 'prevailed' in the commonsense meaning of the word*." *Id.* (emphasis added). It further indicated, consistent with controlling case law, "In interpreting the lease, the intentions of the parties are to be given effect." *Id.* It then concluded that there was "no reason to believe that the parties intended to incorporate [the] statutory definition, which is not even the usual legal definition." *Id.*

Our Supreme Court in *Wachovia* also clarified that *Walji* did not create a general rule equating voluntary dismissal with a final judgment for the purposes of determining a prevailing party. 165 Wn.2d at 490. It explained, "*Walji* merely held that the statutory definition of 'prevailing party' under RCW 4.84.330 could not be imposed where there was already a bilateral contract." *Id.* Our Supreme Court in *AllianceOne Receivables Management Inc. v. Lewis* further reaffirmed *Wachovia* to mean that "there is no default rule that permits the award of attorney fees following voluntary dismissal of a claim under CR 41(a)(1)(B)." 180 Wn.2d 389, 398, 325 P.3d 904 (2014). "'[W]here neither party prevails with a final judgment, neither party is entitled to attorney fees.'" *Id.* (alteration in original) (quoting *Wachovia*, 165 Wn.2d at 492).

Mears concedes that the subcontract it has with Walsh is bilateral and that it is "not seeking fees under RCW 4.84.330." Instead, it argues that the commonsense definition of prevailing party, as discussed in *Walji*, renders Mears the prevailing party. As we established, *Walji* is distinguishable. In addition to the reasons previously described, this is separately so because it involved an

arbitration loss that occurred prior to dismissal. 57 Wn. App. at 286. Furthermore, the panel in *Walji* emphasized that

> [v]oluntary nonsuits may come shortly after service before discovery even starts, or may come after days of trial before a jury. *The decision as to whether a particular voluntary nonsuit should trigger attorney fees should be left to the discretion of the trial judge in light of the circumstances of the particular case*, whether interpreting a contract clause or a statute.

*Id.* at 290 (emphasis added). The fee provision at issue here is embedded in the indemnity clause, which states that the indemnification obligations are resolved only upon a final determination of fault. No such final determination occurred here.

During oral argument before this court, Mears also relied on *Andersen v. Gold Seal Vineyards Inc.*[7] and incorrectly claimed that it involved a bilateral fee provision.[8] In *Andersen*, the defendant voluntarily dismissed a third-party indemnity action several days into trial and sought attorney fees under RCW 4.28.185(5), Washington's long-arm statute, not a bilateral agreement. 81 Wn.2d at 868. Mears' concession that its basis for attorney fees here is contractual renders *Andersen* inapplicable.[9]

Walsh's voluntary nonsuit of the claims against Mears followed King County's dismissal under CR 41 of its suit against Walsh. King County's voluntary dismissal eliminated Walsh's pass-through claim, effectively terminating Walsh's

---

[7] 81 Wn.2d 863, 868, 505 P.2d 790 (1973).

[8] Wash. Ct. of Appeals oral arg., *supra*, at 4 min., 42 sec.

[9] Other cases Mears offers do not advance its position either. None involve the application of an indemnity provision as a basis for attorney fees or similar factual scenarios. *See W. Stud Welding, Inc. v. Omark Indus., Inc.*, 43 Wn. App. 293, 295, 716 P.2d 959 (1986) (involving plaintiff who obtained voluntary dismissal with prejudice on its claims for fraud, breach of fiduciary duty, and interference with contractual relationship); *Cork Insulation Sales Co. v. Torgeson*, 54 Wn. App. 702, 705, 775 P.2d 970 (1989) (concerning defendant who requested attorney fees under RCW 4.84.250, which only applies in circumstances involving entry of judgment after trial).

contractual right to indemnification and defense until a final determination of fault. Even under the usual definition of "prevailing party" as defined in *Walji*, Mears did not prevail in any practical sense. And, because the dismissal of the underlying claim eliminated any need for indemnification, Mears did not prevail in any "action brought to enforce all or any part of" the indemnification provision. The indemnification claim never proceeded to trial or arbitration. Although Mears moved for summary judgment, that motion was continued and never ruled on. Because Walsh's indemnity claim was no longer live, there was no controversy on which Mears could have prevailed. Accordingly, no legal basis in the subcontract or elsewhere supports an attorney fee award and we need not engage in the second step of the analysis: whether the trial court abused its discretion in its denial of Mears' request for fees.[10]

Affirmed.

WE CONCUR:

---

[10] Mears further contends that, had the trial court fully considered the evidence supporting its requested fees and costs, it would have deemed the amount appropriate. Mears also requests fees on appeal pursuant to RAP 18.1(b). Because Mears is not entitled to attorney fees under the indemnification provision, we need not address its arguments regarding reasonableness or its appellate fee request.

Similarly, because Mears is not entitled to attorney fees under the indemnification provision, we need not address Walsh's alternative argument that the trial court's denial should be affirmed because Mears' fee request was untimely and it failed to establish excusable neglect for the late-filed motion.