[No. 30705-7-II.    Division Two.    February 8, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM BOSWELL
COOK IV, *Petitioner*.

*Lance M. Hester*, for petitioner.

*Russell D. Hauge, Prosecuting Attorney*, and *Randall A. Sutton* and *Jeremy A. Morris, Deputies*, for respondent.

¶1 HUNT, J. — Officer William Cook appeals the trial court's denial of his motion to dismiss a 1997 second degree assault (domestic violence) charge. He argues that the trial court erroneously applied RCW 9A.04.080(1)(b)(i), which extends the statute of limitations to 10 years for felonies committed by "public officers." Holding that a police officer's felony violation of his oath to refrain from committing crimes triggers a 10-year statute of limitations under RCW 9A.04.080(1)(b)(i), we affirm.

## FACTS

¶2 Police Officer William Cook was hired by the city of Poulsbo in 1989, and by the city of Bremerton on July 3, 1996. When Bremerton hired Cook, he signed the following oath of office:

I, William B. Cook, solemnly swear . . . that I will abide by the Code of Ethics and Conduct as enumerated in the Police Operations Manual, and will, to the best of my judgment, skill and ability, truly, faithfully, diligently and impartially perform the duties of the position of Police Officer, in and for the City of Bremerton, Kitsap County, Washington, as such duties are prescribed by law, so help me God.

Clerk's Papers (CP) at 59-60.

¶3 In 1997, Cook allegedly punched his wife and lifted her up by her throat until her feet could not touch the ground and she could not breathe. In October 2002, Cook allegedly threw a metal coffee cup at her, punched a hole in the wall of their home, and ripped off a section of handrail. The record does not indicate whether these incidents were reported when they occurred. In April 2003, a fellow officer and friend of the Cooks reported the incidents.[1]

¶4 On May 8, 2003, the State charged Cook with second degree assault for the 1997 incidents, and fourth degree assault and third degree malicious mischief for the 2002 incidents; all charges carried domestic violence special allegations.

¶5 Cook moved to dismiss the 1997 second degree assault charge, arguing that the 3-year statute of limitations had run under RCW 9A.04.080(1)(h). The State responded that under RCW 9A.04.080(1)(b)(i), the statute of limitations extends to 10 years for public officers who commit felonies in breach of their duty or in violation of the oath of office.[2]

¶6 The trial court denied Cook's motion to dismiss, ruling that the statute of limitations was 10 years because the alleged assault would be a violation of Cook's oath of office which, through the Code and Canon of Ethics, prohib-

---

[1] Sergeant Greg Wilson had been best friends with Cook for approximately 18 years. Over the years, Cook had disclosed to Wilson various instances of domestic violence between Cook and his wife, Sara. In April 2003, apparently Cook and Wilson engaged in a heated confrontation, which led to allegations that Wilson had acted improperly. During the inquiry that followed, Wilson disclosed to his police chief Cook's admissions of domestic violence.

[2] The State intends to add four additional felony charges if it prevails here.

its violation of any law. A commissioner of this court granted Cook's motion for discretionary review of the trial court's denial of the motion to dismiss the second degree assault charge.

## ANALYSIS

¶7 Cook argues that the legislature did not intend that the extended statute of limitations for felonies for public officers, RCW 9A.04.080(1)(b)(i), should apply to police officers. We disagree.

### I. STATUTORY CONSTRUCTION

¶8 Construction of a statute is a question of law, which we review de novo under the error of law standard. *City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992); *Inland Empire Distrib. Sys., Inc. v. Utils. & Transp. Comm'n*, 112 Wn.2d 278, 282, 770 P.2d 624 (1989). We must give effect to the Legislature's intent. Review begins with the plain language of the statute. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). Where a statute is unambiguous, we determine legislative intent from the language of the statute alone. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994); *In re Eaton*, 110 Wn.2d 892, 898, 757 P.2d 961 (1988).

¶9 RCW 9A.04.080(1)(b)(i) extends the normal 3-year statute of limitations to 10 years for "[a]ny felony committed by a public officer if the commission is in connection with the duties of his or her office or constitutes a breach of his or her public duty or a violation of the oath of office." We find this statute to be unambiguous and, therefore, determine legislative intent from the plain language of the statute.

## II. PUBLIC OFFICER

■ ¶10 Cook contends that RCW 9A.04.080(1)(b)(i) does not apply here because he was not a "public officer" when he committed the alleged assault.

¶11 RCW 9A.04.110(13) defines "public officer" as follows:

> "Officer" and "public officer" means a person holding office under a city, county, or state government, or the federal government who performs a public function and in so doing is vested with the exercise of some sovereign power of government, and includes all assistants, deputies, clerks, and employees of any public officer and all persons lawfully exercising or assuming to exercise any of the powers or functions of a public officer.

It is well settled that a sworn police officer is a "public officer" while performing the functions of his employment. *See State v. Austin*, 65 Wn.2d 916, 923, 400 P.2d 603 (1965). What is not settled is whether a sworn police officer is also a "public officer" while off duty.[3] There is no statute or case law directly on point.

¶12 Cook argues that for purposes of the statute, a police officer is a "public officer" only while on duty, and he ceases to be a "public officer" when off duty. Cook cites case law

---

[3] In *State v. Devine*, the Supreme Court found a police officer is a "public officer" for purposes of the extended 10-year statute of limitations. 84 Wn.2d 467, 527 P.2d 72 (1974). *Devine* interpreted and applied former RCW 10.01.020 (1937), which was replaced with RCW 9A.04.080(1)(b)(i). 84 Wn.2d at 470. The old and new statutes use the term "public officers" in extending the statute of limitations to 10 years. *Devine*, 84 Wn.2d at 470.

Devine, a sergeant with the Seattle Police Department, was charged and convicted on two counts of bribery for payments received from citizens and business owners in exchange for police noninvolvement. *Devine*, 84 Wn.2d at 468-69. Devine challenged the application of the 10-year statute of limitations on equal protection grounds. *Devine*, 84 Wn.2d at 470. The court rejected Devine's claim because he failed to prove that the questioned classification did not rest on a reasonable basis. *Devine*, 84 Wn.2d at 470. The court stated, "[I]t can scarcely be contended that the state does not have a legitimate interest in the prosecution of criminal acts by public officials." *Devine*, 84 Wn.2d at 470. *Devine* is the only case which interprets the 10-year statute of limitations as applied to a police officer, but it does not address whether the 10-year statute of limitations applies to crimes committed while a police officer is off duty.

that requires a nexus between the officer's actions and his employment. He analogizes to cases where the crime charged, such as bribery, requires the officer to be engaged in his official duties.[4] Cook also points to recall statutes, which require that an official be acting in his official capacity for purposes of removal from office.[5] And Cook analogizes to a tort case in which the police department was not vicariously liable for torts by an officer acting outside his duties.[6] These cases, however, involve statutes that require a nexus between the official and his duties. Such is not the case here.

¶13 The State cites *State v. Graham* for the proposition that a police officer is considered "on duty" 24 hours a day. 130 Wn.2d 711, 927 P.2d 227 (1996). *Graham* holds that an off duty police officer working as a private security guard is still a "public servant" performing "official duties" for purposes of the crime of obstructing a public servant, and he is a "peace officer" for the purposes of the crime of resisting arrest. *Graham*, 130 Wn.2d at 713-14. Within the security guard/peace officer context, the court noted the common law duty of a police officer to preserve the public peace, to protect lives, and to preserve property, even when off duty. *Graham*, 130 Wn.2d at 719.

¶14 The focus in *Graham*, however, was on (1) an off-duty police officer's authority to arrest and (2) the propriety of charging a defendant with the crimes of obstructing and resisting arrest when the arresting officer was an off-duty police officer privately employed as a security guard.[7]

---

[4] *See Austin*, 65 Wn.2d 916; *State v. Hart*, 136 Wash. 278, 239 P. 834 (1925); *State v. Nick*, 66 Wash. 134, 119 P. 15 (1911).

[5] *See In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 10 P.3d 1034 (2000); *In re Recall of Hurley*, 120 Wn.2d 378, 841 P.2d 756 (1992); *State ex rel. Knapp v. Frater*, 198 Wash. 675, 89 P.2d 1046 (1939).

[6] *See Strachan v. Kitsap County*, 27 Wn. App. 271, 616 P.2d 1251, *review denied*, 94 Wn.2d 1025 (1980).

[7] We note that some of the out-of-state cases the *Graham* court cites employ the rationale that an off-duty police officer essentially becomes "on-duty" when he acts in a public capacity to effect an arrest. *See, e.g., Graham*, 130 Wn.2d at 720, "*Williams v. State*, 45 Wis. 2d 44, 48, 172 N.W.2d 31 (1969) (once officer became

*Graham* did not address whether an off-duty police officer, acting in his personal life as an ordinary citizen, is a public officer for purposes of the 10-year statute of limitations. Nonetheless, in light of the lack of other authority, we, like the trial court, look to *Graham*'s holding for guidance: "We hold that *an off-duty police officer is a public servant,* with the authority to respond to emergencies and to react to criminal conduct." *Graham,* 130 Wn.2d at 719 (emphasis added).

### III. VIOLATION OF OATH OF OFFICE

¶15 Cook next challenges his oath of office, claiming that (1) the oath is vague, (2) there should be a nexus between the office and the prohibited conduct, and (3) the oath violates his right to religious freedom.

¶16 Cook took the following oath of office when he joined the Bremerton Police force on July 3, 1996:

I, William B. Cook, solemnly swear . . . that *I will abide by the Code of Ethics and Conduct as enumerated in the Police Operations Manual,* and will, to the best of my judgment, skill and ability, truly, faithfully, diligently and impartially perform the duties of the position of Police Officer, in and for the City of Bremerton, Kitsap County, Washington, as such duties are prescribed by law, so help me God.

CP at 59-60 (emphasis added).

¶17 The Bremerton Police Department's Code of Ethics (16.2), to which the above Oath of Office refers, provides, in pertinent part:

As a law enforcement officer, my fundamental duty is to serve mankind; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the Constitutional Rights of all men to liberty, equality and justice. *I will keep my private life unsullied* as an

---

aware of fight and took action to stop it, he was no longer off duty, stepping into the middle of a crowd of 50-60 people to break up a fight was no 'personal frolic')." Thus, *Graham*'s holding does not resolve the issue before us here.

example to all; maintain courageous calm in the face of danger, scorn, or ridicule; develop self restraint; and, be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life. *I will be exemplary in obeying the laws of the land* and the regulations of the Department. . . . I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of the police service. I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession—law enforcement.

Bremerton Police Department Code of Ethics, ch. 16.00-.000, § 16.2 (emphases added).

¶18 The Code of Conduct, to which the above Oath also refers, includes the Canons of Ethics, which provide, in pertinent part:

CANON ONE: *PEACE OFFICERS SHALL UPHOLD* THE CONSTITUTION OF THE UNITED STATES, THE STATE CONSTITUTION AND *ALL LAWS* ENACTED OR ESTABLISHED PURSUANT TO LEGALLY CONSTITUTED AUTHORITY.

. . . .

STANDARD 4.8 *Peace officers shall not engage in any activity* which would create a conflict of interest or would be *in violation of any law.*

Bremerton Police Department Cannon of Ethics 16.6.1, 16.6.4(A)(8) (emphases added).

## A. Vagueness

¶19 Cook argues that the Bremerton Police oath of office, namely the Code of Ethics, is too vague and, therefore, violates his due process rights. We disagree.

■ ¶20 First, in our view, Cook's due process argument does not apply to the oath, which does not define a crime.[8]

---

[8] In contrast, when a legislative enactment is challenged on vagueness grounds, the issue is whether it meets the two requirements of procedural due process: adequate notice to citizens and adequate standards to prevent arbitrary enforcement. *City of Seattle v. Huff,* 111 Wn.2d 923, 929, 767 P.2d 572 (1989). The party

Rather, the oath, together with the Code of Ethics, which it incorporates by reference, establishes a high standard of conduct to which police officers voluntarily promise to adhere when they choose to become Bremerton police officers. That a violation of this oath may trigger an extended statute of limitations, during which Cook *could* be prosecuted for a crime, does not make the oath itself subject to due process analysis.

¶21 Second, even if due process analysis did apply here, neither the relevant portions of the oath nor the ethics it incorporates by reference are vague. Cook swore that he would "be exemplary in obeying the laws of the land"; and the Canons of Ethics, with which Cook also promised to comply, prohibit any activity that "would be in violation of any law." Commission of a felony is clearly a violation of "the laws of the land" and "any law."

¶22 Moreover, that Cook and other police officers voluntarily commit to such high standards of conduct at all hours of every day is onerous, but not unique. Other public officials also commit, and are held, to similarly high standards. *See, e.g., In re Disciplinary Proceeding Against Turco,* 137 Wn.2d 227, 970 P.2d 731 (1999) (judge censured for "extrajudicial conduct"—angrily knocking his wife to the ground at a church gathering—in violation of Canon 1 of the Code of Judicial Conduct, which reads, in part, "Judges . . . shall personally observe those [high standards of judicial conduct] so that the integrity and independence of the judiciary will be preserved";[9] and Canon 2(A), which reads: "Judges should respect and *comply with the law* and

challenging the constitutionality of the law has the burden of proving it is unconstitutionally vague beyond a reasonable doubt. *Huff,* 111 Wn.2d at 928-29. Here, however, Cook is not challenging the constitutionality of a law. Rather, he attempts to challenge the constitutionality of an oath he voluntarily signed as a condition of his employment as a Bremerton police officer.

[9] As the court explained, the official comment to Canon 1 "sheds light on the intent of Canon 1: 'Although judges should be independent, *they must comply with the law,* including the provisions of this Code.'" *Turco,* 137 Wn.2d at 239 (emphasis added) (quoting Official Comment to Canon 1). Turco, like Cook, argued that his extrajudicial conduct in shoving his wife had nothing to do with his official conduct as a judge and, therefore, should not subject him to censure. The Supreme Court disagreed, noting that it had previously held "Canons 1 and

act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." *Turco*, 137 Wn.2d at 239 (emphasis added).[10]

## B. Nexus Between Office and Conduct

■ ¶23 Contrary to Cook's argument, RCW 9A.04-.080(1)(b)(i) does not require a "public officer" to have been acting in his official capacity or to have been "on duty" when committing a felony, or that there be a nexus between the officer's official duties and the crime in order for the 10-year statute of limitations to apply. The legislature has provided three alternative ways a public officer's felony may fall within the statute: (1) if the crime is in connection with the duties of his or her office, (2) if the crime constitutes a

---

2(A) also apply to actions by a judge in a nonjudicial context." *Turco*, 137 Wn.2d at 239.

Acknowledging that judges "must meet a higher standard of behavior," the court cited an Ohio case, for which certiorari was denied:

> [A] judge is charged with the responsibility of conforming to a higher standard of personal behavior than the ordinary person. A judge's conduct of personal behavior must be "beyond reproach." Improper conduct which may be overlooked when committed by the ordinary person, or even a lawyer, cannot be overlooked when committed by a judge. By accepting his office, a judge undertakes to conduct himself in both his official and personal behavior in accordance with the highest standard that society can expect. As stated in Canon 34, "In every particular his conduct should be above reproach."

*Cincinnati Bar Ass'n v. Heitzler*, 32 Ohio St. 2d 214, 291 N.E.2d 477, 482 (1972), *cert. denied*, 411 U.S. 967 (1973).

. . . .

. . . A citizen who serves as a member of the judiciary . . . is among a chosen few who no longer enjoys the role of an "ordinary" citizen.

*In re Barr, No. 67*, 1998 WL 58975, at * 2, * 29 (Tex. Rev. Trib. Feb. 13, 1998). *Turco*, 137 Wn.2d at 243.

[10] We note that in *Turco*, the Supreme Court confined the Judicial Conduct Commission's authority to discipline judges "to those situations for which there is an articulable nexus between the extrajudicial conduct and the judge's duties." *Turco*, 137 Wn 2d at 244. It discounted, for example, extrajudicial conduct such as gambling. In contrast, however, the court saw a clear nexus between a judge's extrajudicial domestic violence conduct and public confidence in the judiciary, especially that judge's ability to act impartially in domestic violence cases.

Here, however, the focus is not on the discipline of Officer Cook but rather on the legislature's extension of the statute of limitations for felonies committed by public officers, for which no nexus is required. *See* our discussion, *infra*.

breach of his or her public duty, *or* (3) *if the crime violates the oath of office.* RCW 9A.04.080(1)(b)(i). By the statute's plain language, (1) the third alternative does not require the public officer to have been on duty or to have acted in his official capacity if his criminal conduct violates his oath of office; and (2) the legislative intent is clear, through the legislature's use of the disjunctive "or," that where a public officer violates his oath of office, there need not be a nexus between the officer's duties and the crime.

¶24 Cook was a Bremerton police officer in 1997 when he allegedly assaulted his wife, resulting in his being charged with second degree assault, domestic violence, a felony under RCW 9A.36.021(1)(a) and former RCW 10-.99.020(3)(b) (1997). Cook's Oath of Office, incorporating the Code of Ethics and the Code of Conduct Canons of Ethics, prohibits a police officer from violating any law. Because second degree assault is a violation of law, if proved, it would also be a violation of Cook's Oath of Office. And because second degree assault is a felony, the 10-year statute of limitations would apply. RCW 9A.04.080(1)(b)(i).

## C. "So help me God"

¶25 The first amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST., amend. I. The Washington Constitution states, "Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual." WASH. CONST., art. I, § 11.

■ ¶26 In order to challenge the constitutionality of government action, the defendant must establish standing as follows:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection

between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citations and footnote omitted).

■ ¶27 Cook argues that the Bremerton Police Department's oath of office, which he took in 1996, violates his right to religious freedom under the federal and state constitutions.[11] But he does not have standing to challenge the oath now. The injury about which Cook complains is not the reference to God in his oath years ago, but to a longer statute of limitations to which he subjected himself when he violated his oath to obey the law. Only the law-abiding portions of his oath, together with the oath's incorporated codes of ethics and conduct, subjected him to the longer statute of limitations when he committed a felony. In contrast, the phrases he now challenges, "so help me God" or "before God," bear no connection to the longer statute of limitations.

■ ¶28 Moreover, there was no evidence before the trial court to suggest that Cook was an atheist, that the oath's references to God offended him or chilled his free exercise of religion when he took the oath, or that Cook objected to these references to God at the time he took the oath in 1996. In short, the phrases in question did not injure Cook or create grounds for redress.[12]

¶29 We agree with the trial court that Cook was a public officer when he allegedly assaulted his wife, thereby subject

---

[11] The parties cite *Newdow v. United States Congress*, 292 F.3d 597 (9th Cir. 2002). *See* Br. of Appellant at 27-29; Br. of Resp't at 15. Since the filing of the briefs, the Supreme Court of the United States reversed *Newdow* on the standing issue. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 124 S. Ct. 2301, 159 L. Ed. 2d 98 (2004).

[12] Moreover, invalidation of the challenged phrases would not affect Cook's being subject to RCW 9A.04.080(1)(b)(i).

to the extended statute of limitations in RCW 9A-.04.080(1)(b)(i), regardless of whether he was acting in his official capacity. We hold that the trial court did not err in denying Cook's motion to dismiss the second degree assault charge.

¶30 Affirmed.

VAN DEREN, J., concurs.

¶31 ARMSTRONG, J. (dissenting) — Because I believe the majority misreads the statute extending the limitations period for public officers, I dissent.

¶32 When William Cook became a police officer, he took an oath of office stating that he would abide by the Code of Ethics and Conduct as enumerated in the Police Operations Manual and perform the duties of a Police Officer "as such duties are prescribed by law." Clerk's Papers (CP) at 59-60. The Code of Ethics states that as a law enforcement officer, he had a fundamental duty to serve mankind, safeguard lives and property, protect the innocent against deception, the weak against oppression, the peaceful against violence, and respect the constitutional rights of all; he also promised that he would "keep my private life unsullied" and would be "exemplary in obeying the laws of the land." CP at 22. The Code of Conduct also incorporates a Canon of Ethics, which states that "Peace Officers shall not engage in any activity which . . . would be in violation of any law." CP at 60.

¶33 RCW 9A.04.080(1)(b)(i) extends to 10 years the 3-year limitations period for second degree assault (domestic violence). The statute applies to "[a]ny felony committed by a public officer if the commission is in connection with the duties of his or her office or constitutes a breach of his or her public duty or a violation of the oath of office." More than three years after the alleged incident, the State charged Cook with domestic violence assault. The State argues that Cook is subject to the extended 10-year period because he violated his oath of office when he committed the alleged assault.

¶34 The question is whether the legislature intended RCW 9A.04.080(1) to apply to any felony an officer commits, regardless of its relationship to his or her duties or office, simply because the oath of office incorporates by reference the broadly worded Code of Ethics and Conduct.

¶35 We construe a statute as a whole and attempt to give meaning to every part of it. *Hartson P'ship v. Martinez*, 123 Wn. App. 36, 42, 96 P.3d 449 (2004) (stating that in ascertaining legislative intent, we look to the statutory scheme as a whole); *State v. Beaver*, 148 Wn.2d 338, 343, 60 P.3d 586 (2002) (stating that in reviewing a statute, we give meaning, if possible, to every word contained in it). If a criminal statute is ambiguous, we read it in favor of the accused. *State v. Roberts*, 117 Wn.2d 576, 586, 817 P.2d 855 (1991). These statutory construction rules compel me to conclude that the 10-year statutory extension does not apply to crimes an officer commits that are completely unrelated to his duties as a police officer.

¶36 We can read the phrase "oath of office" narrowly or broadly. If read narrowly, it applies only to Cook's promise to faithfully perform his duties as a police officer. If read broadly, it applies not just to his conduct on the job, but his conduct in general. No part of Cook's life would escape the far-flung net of living an unsullied private life and being exemplary in obeying the laws of the land. And the oath would be not an oath of office, but an oath of life. Because the oath of office is ambiguous, I would adopt the narrower interpretation that favors Cook.

¶37 In addition, reading the statute as a whole and giving meaning to all parts, I conclude that reading "oath of office" broadly as the majority does, renders much of the statute meaningless. The statute extends the limitations period for a felony committed in connection with the public officer's official duties or in violation of his public duty. But if the third triggering event—violation of oath—covers every part of the officer's life, the first two triggering events are meaningless and unnecessary. Both private life conduct and job performance would be included in living an unsul-

lied private life and being exemplary in obeying the laws. I would read meaning back into them and construe the oath of office violation as covering any part of job performance not covered by the first two conditions—felonies committed in connection with job duties or in breach of public duty.

¶38 Finally, the majority's broad reading effectively gives state agencies unbridled authority to amend the statute of limitations as to public officers. In particular, it allows agencies to incorporate by reference into their oaths of office laundry lists of expectations for daily and personal conduct wholly unrelated to an agency's delegated authority or an officer's duties, official capacity, or scope of employment. *Cf. Barendregt v. Walla Walla Sch. Dist. No. 140*, 26 Wn. App. 246, 249, 611 P.2d 1385 (1980) (stating that an administrative agency created by statute has only those powers expressly granted or necessarily implied by that statute). Thus, agencies would be free to strip a public officer of statute of limitations' protections simply by adding more expectations to the oath of office. This reading could not have been intended by the legislature; I must respectfully dissent.

Review denied at 155 Wn.2d 1013 (2005).