IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33812-6-III |
| Respondent, | ) | (consolidated with |
| | ) | Nos. 33836-3-III, 33804-5-III, |
| v. | ) | 33805-3-III) |
| | ) | |
| TAYLOR ROSS LANDRUM, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| In the Matter of the Personal Restraint of | ) | |
| | ) | |
| TAYLOR ROSS LANDRUM, | ) | |
| | ) | |
| Petitioner. | ) | |

SIDDOWAY, J. — Taylor Landrum appeals following a remand for resentencing and for the trial court to conduct a post hoc review, under *Bone-Club*,[1] of its order sealing juror questionnaires. A threshold issue is whether he complains of matters outside the scope of issues considered by the trial court on remand, and that are therefore outside the scope of this appeal. His timely personal restraint petition is consolidated with this second appeal.

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

We remand again for the trial court to correct the standard range for Mr. Landrum's solicitation of perjury conviction and a few clerical errors, to vacate sexual assault protection orders entered to protect three witnesses, and to strike a number of community custody conditions. Finding no merit in his personal restraint petition, we dismiss it.

## FACTS AND PROCEDURAL BACKGROUND

In July 2008, the Benton County prosecutor charged Taylor Landrum with attempted indecent liberties for his forcible sexual advances on a 27-year-old woman in October 2006. It thereafter charged him with the second degree rape of a different, 29-year-old woman, in October 2008. It eventually added four counts of solicitation to commit first degree perjury to the second information, based on letters Mr. Landrum passed to a fellow inmate in an effort to get him to lie about the victim of the rape.

Following a consolidated trial, the jury found Mr. Landrum guilty of all charges. In sentencing Mr. Landrum, the court imposed a couple dozen community custody conditions, a number of which limited his contact with minors; his viewing of written, pictorial, or video materials; his computer and Internet use; and authorized polygraph testing at the request of his therapist or community corrections officer. No objection was made. The trial court sealed questionnaires that had been completed by jurors.

In Mr. Landrum's first appeal, this court reversed three of his solicitation of perjury convictions as inconsistent with the applicable unit of prosecution but affirmed

2

his remaining convictions. It ordered the trial court to determine, applying the *Bone-Club* factors, whether the juror questionnaires should remain sealed. On remand, the trial court vacated the order sealing the questionnaires. It resentenced Mr. Landrum, imposing a sentence of 80 months to life for the attempted indecent liberties conviction, 170 months to life for the rape conviction, and 20 months for the solicitation conviction, each to run concurrently. Over Mr. Landrum's objection, the trial court imposed the same community custody conditions originally imposed. It sentenced him to lifetime community custody and ordered him to register as a sex offender.

Turning to costs on conviction, the trial court stated its understanding that the State was willing to waive discretionary costs, which the prosecutor agreed was correct. The court then stated, "So the court would not be imposing anything other than the mandatory fees." Report of Proceedings (RP) (Mar. 18, 2015) at 111. It announced it would impose only a $500 crime victim's assessment fee, and $260 in what it referred to as clerk's and filing fees, for a total of $760 in each case. *Id.* at 112-13. The judgment and sentence entered for the rape conviction included a $100 DNA[2] collection fee, however, for total costs of $860.

---

[2] Deoxyribonucleic acid.

3

Finally, the trial court entered postconviction sexual assault protection orders in favor of the two victims of the crimes of conviction as well as three other women whose testimony about encounters with Mr. Landrum was admitted at trial under ER 404(b).

Mr. Landrum appeals again. Consolidated with the appeal is his motion for a new trial, transferred to this court for consideration as a personal restraint petition.

## ANALYSIS

"The general rule is that a defendant is prohibited from raising issues on a second appeal that were or could have been raised on the first appeal." *State v. Fort*, 190 Wn. App. 202, 233-34, 360 P.3d 820 (2015), *review denied*, 185 Wn.2d 1011 (2016) (citing RAP 2.5(c); *State v. Sauve*, 100 Wn.2d 84, 87, 666 P.2d 894 (1983); *State v. Mandanas*, 163 Wn. App. 712, 716, 262 P.3d 522 (2011)). This rule applies even when the issue is one of constitutional magnitude. *Id.* at 716-17. The proper vehicle for new issues is a personal restraint petition. *Sauve*, 100 Wn.2d at 87.

RAP 2.5(c)(1) nonetheless permits review "where the trial court has exercised some discretion." *Mandanas*, 163 Wn. App. at 716 n.2. The rule provides:

> If a trial court decision is otherwise properly before the appellate court, the appellate court may at the instance of a party review and determine the propriety of a decision of the trial court even though a similar decision was not disputed in an earlier review of the same case.

4

RAP 2.5(c)(1).[3] The rule "'does not revive automatically every issue or decision which was not raised in an earlier appeal.'" *State v. Wheeler*, 183 Wn.2d 71, 78, 349 P.3d 820 (2015) (quoting *State v. Barberio*, 121 Wn.2d 48, 50, 846 P.2d 519 (1993)). Since the rule deals with trial court decisions *presently* before the appellate court, it is "'[o]nly if the trial court, on remand, exercised its independent judgment, reviewed and ruled again on such issue [that] it become[s] an appealable question.'" *Id.* Moreover, the rule permits but does not mandate review of unremanded matters, in both the trial court and the appellate court. *Barberio*, 121 Wn.2d at 51.

Mr. Landrum's challenges to errors in his new judgment and sentence on the solicitation count are properly before us, as are the sexual assault protection orders requested by the State and entered at the time of resentencing. We reject the State's argument that the trial court did not exercise independent judgment to review and reconsider the community custody conditions. The State affirmatively, even if unnecessarily, re-asked that the conditions be imposed, and the trial court heard and ruled on Mr. Landrum's objection to them.

Several issues identified in Mr. Landrum's statement of additional grounds will not be considered for the first time in this second appeal, however, as discussed hereafter.

---

[3] The condition that the trial court decision be "properly before the appellate court" refers in part to the requirement that a litigant properly preserve issues for appellate review. 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE: RAP 2.5, at 238 (8th ed. 2014).

### *I. Errors in the judgment and sentence*

Several errors in the judgment and sentence require correction. First is the

identification of the standard range for solicitation to commit first degree perjury.

The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, requires that

"[a]ny sentence imposed under this chapter shall be determined in accordance with the

law in effect when the current offense was committed." RCW 9.94A.345. Mr.

Landrum's solicitation of perjury was alleged to have occurred between October 11, 2008

and September 1, 2009. During that time, the SRA provided:

> For persons convicted of the anticipatory offenses of criminal . . .
> solicitation . . . under chapter 9A.28 RCW, the presumptive sentence is
> determined by locating the sentencing grid sentence range defined by the
> appropriate offender score and the seriousness level of the crime, and
> multiplying the range by 75 percent.

RCW 9.94A.595. Mr. Landrum's offender score on the solicitation charge was an

undisputed 3. Based on that offender score and first degree perjury's seriousness level of

V, the standard range for the completed crime is 15 to 20 months. RCW 9.94A.515

(2008); 9.94A.510 (2008). Seventy-five percent of that range is 11.25 to 15 months, so

Mr. Landrum's sentence of 20 months exceeds the maximum. While the State is correct

that his total sentence is unaffected by the error, Mr. Landrum is entitled to have the

sentence corrected.

Mr. Landrum also identifies two clerical errors in the judgments and sentences,

both conceded by the State. "A clerical mistake is one that when amended would

correctly convey the intention of the court based on other evidence." *State v. Priest*, 100 Wn. App. 451, 456, 997 P.2d 452 (2000). A court may correct a clerical mistake at any time. CrR 7.8(a).

First, the trial court imposed Mr. Landrum's sentence under RCW 9.94A.507, rather than RCW 9.94A.712, which was the statute in effect at the time the crimes occurred. RCW 9.94A.507 did not become effective until August 1, 2009. *See* LAWS OF 2008, ch. 231, § 33.

Second, Mr. Landrum argues the trial court inadvertently imposed more costs than the mandatory LFOs intended. He is mistaken in contending that the court imposed $2,452.01 in LFOs in the judgment and sentence for the indecent liberties conviction; he is looking at the cost bill listing all of the county's expenses without noting that only two are marked by the court to be taxed. The total ordered by the court in that judgment and sentence was $860.

Mr. Landrum correctly argues that the $60 sheriff's fee imposed is a discretionary cost. *See* RCW 10.01.160(2) (authorizing "expenses specially incurred by the state in prosecuting the defendant"). Based on its stated intention to impose only mandatory costs, the imposition of the sheriff's fee was a mistake.

However, the $100 discrepancy between the two judgments brings to light that the trial court only imposed the mandatory $100 DNA fee in the judgment and sentence for indecent liberties. The trial court and prosecutor orally expressed uncertainty as to

7

whether the DNA fee had become mandatory, but the court orally announced it would waive the fee, recognizing it could be corrected if it was wrong. It then waived the DNA fee, but only in the judgment and sentence for rape and solicitation.

Though previously the $100 DNA fee could be waived if the court found it would result in undue hardship, in 2008 the legislature amended the statute to make the fee mandatory. *See* LAWS OF 2002, ch. 289, § 4; LAWS OF 2008, ch. 97, § 3; *State v. Shelton*, 194 Wn. App. 660, 669-70, 378 P.3d 230 (2016), *review denied*, 187 Wn.2d 1002 (2017) (explaining the statutory history). As an adult who had been convicted of the two sex offenses and who was required to register as a sex offender under RCW 9A.44.130(1), Mr. Landrum was required to submit to DNA collection under RCW 43.43.754(1)(b). Under RCW 43.43.7541, he was required to pay the $100 DNA fee. While the judgments and sentences must be corrected to strike the discretionary sheriff's fee, the mandatory DNA fee must be imposed, for total costs in each judgment and sentence of $800.

## II. Sexual assault protection orders

At resentencing, the State asked the court to enter permanent postconviction sexual assault protection orders for the two victims of the crimes of conviction as well as three women who testified at trial about Mr. Landrum's similar conduct toward them. Mr. Landrum contends that RCW 7.90.150, the statute that authorizes such protection orders, applies only to victims of the crime of conviction. Because he did not object to

8

entry of the orders at the time of his resentencing, he frames his challenge as a claim of ineffective assistance of counsel.

Effective assistance of counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Mierz*, 127 Wn.2d 460, 471, 901 P.2d 286 (1995). To demonstrate ineffective assistance of counsel, a defendant must show two things: "(1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). "A claim of ineffective assistance of counsel presents a mixed question of fact and law reviewed de novo." *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

RCW 7.90.150 provides that when a defendant is found guilty of certain identified sex offenses including those charged here, and a condition of the sentence restricts the defendant's ability to have contact with the victim, "the condition shall be recorded as a sexual assault protection order." RCW 7.90.150(6)(a).

9

The State—relying on the legislative declaration to chapter 7.90 RCW, which speaks generically of victims of sexual assault—argues that the word "victim" in RCW 7.90.150(6)(a) should be construed broadly. But chapter 7.90 RCW includes a process whereby any sexual assault victim may obtain such an order "regardless of whether or not there is a pending lawsuit, complaint, petition, or other action between the parties" by proving by a preponderance of the evidence that nonconsensual sexual conduct occurred. RCW 7.90.020(2), .090(1)(a). As a result, the legislative declaration does not necessarily inform the meaning of RCW 7.90.150, which gives rise to automatic sexual assault protection order status in the event of certain convictions.

Whether a trial court has authority to enter protection orders for witnesses who testified at the trial but were not victims of the crimes of conviction is a question of statutory interpretation reviewed de novo. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010). The fact that "victim" in the provision is preceded by the definite article "the" instead of the indefinite article "a" would generally indicate a specific, identified victim:

> "The rules of grammar . . . provide that the definite article, 'the', is used 'before nouns of which there is only one or which are considered as one.'" *State v. Neher*, 52 Wn. App. 298, 300, 759 P.2d 475 (1988) (quoting A.J. THOMSON & A.V. MARTINET, A PRACTICAL ENGLISH GRAMMAR 3 (3d ed. 1982)), *aff'd*, 112 Wn.2d 347, 771 P.2d 330 (1989). The indefinite article "a" or "an" is used, on the other hand, "'when the individual in question is undetermined, unidentified, or unspecified.'" *State v. Ose*, 156 Wn.2d 140, 146, 124 P.3d 635 (2005) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1 (2002)).

10

*Dep't of Ecology v. City of Spokane Valley*, 167 Wn. App. 952, 965, 275 P.3d 367 (2012) (footnote omitted). Because RCW 7.90.150(6)(a) speaks of a defendant found guilty of a sex offense and a sentencing condition restricting contact with "*the* victim," not "*a* victim"; a legislative intent to limit automatic sexual assault protection order status to orders protecting victims of the crime of conviction is clear. The requirement that other victims must petition and prove entitlement to such an order further supports Mr. Landrum's contention that the application of automatic sexual assault protection order status is limited.

The State nonetheless argues that even under this interpretation of the statute, Mr. Landrum's lawyer was not ineffective because he could reasonably conclude that the court could provide no contact protection for the witnesses as a crime-related condition or as antiharassment no contact orders. RCW 9.94A.505(9) (crime-related conditions); *State v. Warren*, 134 Wn. App. 44, 138 P.3d 1081 (2006), *aff'd*, 165 Wn.2d 17, 195 P.3d 940 (2008) (crime-related conditions can forbid contact with witnesses); chapter 10.14 RCW (antiharassment no contact orders). But antiharassment no contact orders require the court to find by a preponderance of the evidence that unlawful harassment exists, which was not proved here. RCW 10.14.080(3). And the penalties for violation of the different types of orders are different. Violation of community custody may be subject only to a sanction. RCW 9.94A.737. Violation of an antiharassment protection order

11

may subject the offender to a gross misdemeanor, contempt of court, or sanctions. RCW 10.14.170; RCW 10.14.120. A violation of a sexual assault protection order is generally a gross misdemeanor but can be a felony in the case of certain repeat offenses or an assault. RCW 26.50.110(1)(a).

We conclude it was deficient performance for counsel at the resentencing to fail to object to orders that should not have been available, and that could subject his client to future charges for contact with any of three individuals.

We also conclude the failure to object was prejudicial. Absent evidence in the record supporting equivalent prohibitions on Mr. Landrum's contact with the witnesses, there was a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.

*III. Conditions of community custody*

At the State's request, and over Mr. Landrum's objection, the trial court re-imposed the following conditions of community custody:

(10) Have no contact with any minors, unless approved by your therapist. In case of approved contact, it shall be only in the presence of an adult who has received prior approval from the therapist. The sponsor must be aware of offense behavior.
. . . .
(13) Submit to polygraph testing upon the request of your therapist and/or Community Corrections Officer, at your own expense.
(14) Do not possess or view material that includes images of children wearing only undergarments and/or swimsuits.
(15) Do not possess or view material that includes images of nude women, men, and/or children.

12

(16) Do not possess or view material that shows women, men and/or children engaging in sexual acts with each other, themselves, with an object, or animal.
. . . .
(20) Do not view or attend X-rated movies, peep shows, or adult book stores.
(21) Avoid places where children congregate, including parks, libraries, playgrounds, schools, daycare centers, and video arcades.
(22) Hold no position of trust or authority involving children.
. . . .
(25) Have no access to computers or the internet.

CP at 842-43. Because the trial court engaged in independent review of the conditions at the time of resentencing, we have discretion to consider them on direct appeal.

## Ripeness

As a threshold matter, because Mr. Landrum is currently incarcerated and has not yet been charged with violating the challenged conditions, we must determine whether his challenge is ripe for review. *See State v. Sanchez Valencia*, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010). Pre-enforcement challenges to community custody conditions are ripe for review "'if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *State v. Bahl*, 164 Wn.2d 739, 751, 193 P.3d 678 (2008) (quoting *First United Methodist Church v. Hr'g Exam'r for Seattle Landmarks Pres. Bd.*, 129 Wn.2d 238, 255-56, 916 P.2d 374 (1996)). We must also consider "'the hardship to the parties of withholding court consideration.'" *Id.* at 255.

All of the circumstances of ripeness are present with respect to these final sentencing conditions, which will limit Mr. Landrum as soon as he is released from

13

custody and that he challenges as not crime-related: a pure issue of law. *See Sanchez Valencia*, 169 Wn.2d at 788. The fact that Mr. Landrum will have to alter his behavior to avoid a penalty under potentially illegal regulations, or expose himself to arrest or prosecution to challenge them, presents hardship. *See Bahl*, 164 Wn.2d at 747.

*Conditions*

The Sentencing Reform Act of 1981 empowers trial courts to impose "crime-related prohibitions" during the period of community custody. Former RCW 9.94A.505(8) (2008). "Crime-related prohibitions" are orders directly related to "the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). A court's imposition of crime-related prohibitions is reviewed for an abuse of discretion. *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

"The philosophy underlying the 'crime-related' provision is that '[p]ersons may be punished for their crimes and they may be prohibited from doing things which are directly related to their crimes, but they may not be coerced into doing things which are believed will rehabilitate them.'" *Riley*, 121 Wn.2d at 36-37 (alteration in original) (quoting DAVID BOERNER, SENTENCING IN WASHINGTON § 4.5, at 4-7 (1985)). Mr. Landrum challenges conditions limiting his contact with minors; his viewing of written,

14

pictorial, or video materials; his computer and Internet use; and the breadth of a condition subjecting him to polygraph testing.

*Contact with, and depictions of, minors.* Community custody conditions 10, 14, 21, and 22 relate to having contact with children, being in locations where children congregate, and possessing or viewing material that includes images of children wearing only undergarments or swimsuits. The State justifies the conditions on the basis that one of the ER 404(b) witnesses against Mr. Landrum was in her late teens at the time of her encounter with him. The record reveals she was actually 20 years old. The State also points out that the presentence investigation report states that Mr. Landrum was once arrested for visiting a high school under false pretenses in order to contact a 15-year-old female student. But this was in 2001, when Mr. Landrum was himself 18 years old—and the basis for the arrest was trespass; the student admitted that she and Mr. Landrum planned to meet at the school that day. Finally, the State points out that Mr. Landrum's crimes reveal a pattern of offering rides to vulnerable women and argues that minor-age women often need rides.

In *State v. Riles*, 135 Wn.2d 326, 349-50, 957 P.2d 655 (1998), *abrogated by State v. Sanchez Valencia*, 169 Wn.2d 782, 239 P.3d 1059 (2010), the Washington Supreme Court found that a community custody condition prohibiting a defendant, Gholston, from contacting minors, was not reasonably related to his crime of raping a 19-year-old woman. The court reasoned that nothing in the record showed Gholston was a risk to

15

children. *Id.* at 350. The State attempts to distinguish *Riles*, contending that evidence that Mr. Landrum is a danger to minors is present here. Br. of Resp't at 10. But the lower appellate court in *Riles* articulated a reason for prohibiting Gholston's contact with minors that was about as persuasive as the State's argument in this case: it held, "the victim was 'in her late teen-age years, not so far removed from minority that there is no possibility that her youthful appearance was not a factor in Gholston's choice of her as his victim.'" *Riles*, 135 Wn.2d at 349 (quoting *State v. Gholston*, noted at 86 Wn. App. 1028, 1997 WL 288938, at *4). Our Supreme Court rejected what it characterized as that "gratuitous" justification for limiting contact with children. *Id.*

There is no reasonable relationship between Mr. Landrum's crimes and the conditions relating to minors. They should be stricken.

*Images of nude individuals and sexually explicit materials.* Community custody condition 15 provides: "Do not possess or view material that includes images of nude women, men, and/or children." CP at 315. There is nothing in the record that indicates images of nude women, men, or children contributed or were in any way related to Mr. Landrum's crimes. And such a limitation is overbroad, preventing Mr. Landrum from viewing even great works of art. This condition should be stricken.

Community custody conditions 16 and 20, by contrast, restrict possession and use of sexually explicit materials. Condition 16 provides: "Do not possess or view material that shows women, men, and/or children engaging in sexual acts with each other,

16

themselves, with an object, or animal." CP at 315. Condition 20 prohibits Mr. Landrum from viewing or attending X-rated movies, peep shows, or adult book stores. While the record does not demonstrate that such activities served as a catalyst for Mr. Landrum's crimes, because Mr. Landrum was convicted of a sex offense, conditions regarding access to sexually explicit materials are crime related. *See State v. Magana*, 197 Wn. App. 189, 201, 389 P.3d 654 (2016). The conditions were properly imposed.

*Computers or the Internet.* Community custody condition 25 prohibits Mr. Landrum from accessing computers or the Internet. The State does not try to defend it as crime related. The record does not reveal any connection between the Internet or computers and the crimes for which Mr. Landrum was convicted. The condition should be stricken.

*Polygraph testing.* Community custody condition 13 requires Mr. Landrum to submit to polygraph testing if requested by his therapist or community corrections officer. Mr. Landrum objects because the condition does not limit the testing to monitoring his compliance with other community custody conditions.

In *Riles*, our Supreme Court upheld an identical condition (although in that case, the condition also required plethysmograph testing), but stated that polygraph testing is authorized only "to monitor compliance with other conditions of community [custody]." *Riles*, 135 Wn.2d at 351-52. In the court of appeals, the court had viewed such a

17

limitation as implicit. *State v. Riles*, 86 Wn. App. 10, 16-17, 936 P.2d 11 (1997), *aff'd*, 135 Wn.2d 326, 957 P.2d 655 (1998).

In a later case, this court found that a community custody condition authorizing polygraph testing should contain language setting forth the "'monitoring compliance'" limitation. *State v. Combs*, 102 Wn. App. 949, 953, 10 P.3d 1101 (2000). It explained that requiring such language "will serve to better inform offenders of their rights, ensure protection of those rights, and prevent confusion amongst judges, defendants and community corrections officers regarding the applicable legal standard." *Id.*

Without deciding that "monitoring compliance" language is required, we do encourage its use. We direct the trial court to add the limiting language to the condition in this case, inasmuch as we are remanding for other reasons.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds for review (SAG), Mr. Landrum raises five. The rules on appeal permit the defendant to file a SAG in order to identify and discuss matters that have not been adequately addressed by the brief filed by the defendant's counsel. RAP 10.10(a). A SAG is not required to cite authorities or to the record itself, but must sufficiently inform the court of the nature and occurrence of the alleged errors. RAP 10.10(c). We will not search the record in support of insufficiently identified error. *Id.*

*Interest on legal financial obligations.* Mr. Landrum complains that the trial court failed to address his request at resentencing pursuant to RCW 10.82.090 for a waiver of interest on his legal financial obligations. Subsection (2) of that statute provides, "The court may, on motion by the offender, following the offender's release from total confinement, reduce or waive the interest on legal financial obligations levied as a result of a criminal conviction," and then describes the interest that shall or may be waived. The language "following the offender's release from total confinement" describes when the motion may be made. This is consistent with the first subsection of RCW 10.82.090, which mandates that interest begins to accrue on the date the judgment is entered. RCW 10.82.090(2); *State v. Claypool*, 111 Wn. App. 473, 45 P.3d 609 (2002). It is also consistent with the statute's description of interest that shall or may be waived, which contemplates that the offender has been released. *E.g.*, RCW 10.82.090(2)(a) (providing for the waiver of certain interest "that accrued during the term of total confinement"). Since Mr. Landrum has not yet been released from total confinement, the trial court had no authority to waive the interest on the LFOs imposed. Mr. Landrum may address the issue upon his release.

Mr. Landrum also asks us to remand for a correction of the LFOs imposed. This issue was adequately addressed by counsel.

*Indeterminate Sentencing Review Board and Sex Offender Treatment Program challenges.* Mr. Landrum next argues that a requirement of the Indeterminate Sentencing

19

Review Board and the Department of Corrections' (DOC's) Sex Offender Treatment Program that a criminal defendant must admit guilt before he or she can receive treatment or obtain release violates several constitutional rights. He does not identify any statute whose constitutionality he challenges, no statute was challenged on this basis in his first appeal, and the trial court did not independently review this issue at the time of resentencing. If he is challenging a statute, we will not consider it in this, his second direct appeal.

If he is instead challenging a practice of the Board or the DOC, there is nothing in the record to establish it, or that he has suffered injury from it, a requirement for issues raised in a SAG, *see* RAP 10.10(c), and a prerequisite for challenging the constitutionality of government action. *See State v. Cook*, 125 Wn. App. 709, 720-21, 106 P.3d 251 (2005) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). If and when the Board denies Mr. Landrum parole, directly or indirectly because he refuses to admit guilt, he may seek relief by personal restraint petition. *See State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991). *But cf. In re Pers. Restraint of Dyer*, 164 Wn.2d 274, 288, 189 P.3d 759 (2008) (The Board "may base its decision to deny parole, in part, upon the fact that the offender refuses treatment that requires him or her to take responsibility for criminal behavior."); *In re Pers. Restraint of Dyer*, 175 Wn.2d 186, 198, 283 P.3d 1103 (2012).

*Lifetime community custody and sex offender registration.* Mr. Landrum argues that lifetime community custody and the requirement that he register as a sex offender are unconstitutional. The issue presented is a "clear and obvious issue which could have been decided in . . . the first appeal." *Barberio*, 121 Wn.2d at 52. Review is unavailable at this late stage. *Id.*

*Community custody conditions.* Mr. Landrum objects to the imposition of several community custody conditions. His objection to condition 15—that he not view material that contains images of nude men, women, or children—was addressed by counsel. His further argument that if he participates in sex offender treatment he will violate the condition overlooks the fact that the condition does not become effective until his release. If postrelease treatment would require a violation, he can challenge the condition then.

He objects to condition 18, that he "not consume alcohol," as not crime related. CP at 16. A condition prohibiting an offender from possessing or consuming alcohol does not have to be crime related. *See* RCW 9.94A.703(3)(e); *see also State v. Jones*, 118 Wn. App. 199, 206-07, 76 P.3d 258 (2003) (construing former RCW 9.94A.120(8)); *State v. Acevedo*, 159 Wn. App. 221, 233, 248 P.3d 526 (2010).

He objects to condition 13, that he submit to polygraph testing, on the basis (not argued by his counsel) that polygraphs are unreliable and not accepted in the scientific community. The Washington Supreme Court has rejected this as a basis for challenging polygraph testing used for postrelease monitoring: "Although the results of polygraph

21

tests are generally not admissible in a trial, this Court has acknowledged their validity as an investigative tool." *Riles*, 135 Wn.2d at 342.

Finally, Mr. Landrum objects to the following conditions as vague and ambiguous:

(2) Work at Department of Corrections' approved education, employment, and/or community service;
. . . .
(6) Receive prior approval for living arrangements and residence location;
. . . .
(9) Remain within geographic boundary, as set forth in writing by the Community Corrections Officer.

CP at 315. The fact that approvals and parameters will be decided in the future does not make these conditions vague or ambiguous. The subject matters and sources of approval are clear.

We reverse Mr. Landrum's sentence for solicitation of first degree perjury and community custody conditions 10, 14, 15, 21, 22, and 25 in each judgment and sentence. We remand for resentencing at which the sentence imposed for the solicitation conviction shall not exceed the statutory maximum, the clerical errors and LFO amount in the judgment and sentences will be corrected, and the polygraph testing authorized by condition 13 shall be expressly limited to testing to monitor compliance with other conditions of community custody. Finally, we direct the trial court to vacate the sexual assault protection orders protecting J.J.R. (*see* CP at 318), A.N.M., and M.S.J. (*see* CP at 845). We need not address Mr. Landrum's request that we exercise discretion under RAP 14.2 to deny the State costs on appeal because the State has not substantially prevailed.

22

## PERSONAL RESTRAINT PETITION

On September 25, 2015, Mr. Landrum filed a motion for a new trial in both cases below, relying on a change in the law announced in *State v. W.R.*, 181 Wn.2d 757, 336 P.3d 1134 (2014). In that case, the Washington Supreme Court overruled precedent that required a defendant to a rape charge to prove consent to sexual intercourse by a preponderance of the evidence, holding that "once a defendant asserts a consent defense and provides sufficient evidence to support the defense, the State bears the burden of proving lack of consent as part of its proof of the element of forcible compulsion." *Id.* at 763. Pursuant to CrR 7.8(c), the trial court transferred Mr. Landrum's motion to this court for consideration as a personal restraint petition.

As the State points out, no consent instruction was given in Mr. Landrum's trial, so the jury did not decide the case on the basis of a mistaken understanding of the burden of proof. Mr. Landrum cannot point to any error that occurred *at trial*. But he contends that had he been informed of the "correct" law—viz., that he would not have to prove consent by a preponderance of the evidence—he would have altered his trial strategy and taken a plea deal. His personal restraint petition therefore presents only an issue of ineffective assistance of counsel, not trial error.

As earlier discussed, any claim of ineffective assistance of counsel requires a defendant to show that counsel's performance was deficient and that the defendant was

23

prejudiced by the deficient performance.[4] In assessing performance, we indulge in a strong presumption that the defendant was properly represented. *State v. Tilton*, 149 Wn.2d 775, 784, 72 P.3d 735 (2003).

"Many state and federal cases have . . . concluded that an attorney's failure to raise novel legal theories or arguments is not ineffective assistance." *State v. Brown*, 159 Wn. App. 366, 371, 245 P.3d 776 (2011) (citing cases). A number of Washington decisions hold, like most federal courts, that counsel's failure to anticipate changes in the law does not amount to deficient performance. *Id.* at 373.

Mr. Landrum does not explain how or why his trial lawyer should have foreseen *W.R.*'s overruling of prior case law, particularly given the importance the Washington Supreme Court attaches to the doctrine of stare decisis. *See W.R.*, 181 Wn.2d at 768 (prior decisions are overruled only on a "clear showing" that the prior rule is "incorrect and harmful"). We note that a third of the Supreme Court justices who heard *W.R.* would not have overruled prior law. They characterized prior law in their dissent as including "recent and well-reasoned precedent." 181 Wn.2d at 771 (Owens, J. dissenting). We do not expect trial counsel to be able to foresee even better than our most senior jurists, that established precedent warrants overruling.

---

[4]In *In re Personal Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012), our Supreme Court held that a showing of prejudice for purposes of an ineffective assistance of counsel claim necessarily meets a personal restraint petitioner's burden of showing actual and substantial prejudice.

Deficient performance is not shown, so we need not address prejudice. *Strickland*, 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."). Mr. Landrum's personal restraint petition is dismissed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, C.J.

25